**UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, LOCAL UNION NO. 525, LAS VEGAS, NEVADA, (AFL–CIO), Petitioner,**

v.

**The Honorable Roger D. FOLEY, Jr., Judge of the United States District Court, District of Nevada, Respondent,**

**Reynolds Electrical & Engineering Company, Inc., Real Party in Interest.**

**No. 21562.**

United States Court of Appeals Ninth Circuit.

June 28, 1967.

Morton Galane, Las Vegas, Nev., for appellant.

V. Gray Gubler, Las Vegas, Nev., William F. Spalding, Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellee.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

PER CURIAM.

This is an original proceeding in the nature of mandamus. The petitioning union will be referred to as Local 525. Respondent is The Honorable Roger D. Foley, Jr., Judge of the United States District Court, District of Nevada. The real party in interest is Reynolds Electrical & Engineering Company, Inc. (Reynolds).

Local 525 seeks issuance of a writ commanding respondent judge to vacate and set aside an order, entered on December 29, 1966, in Local 525 v. Reynolds and Catalytic Construction Company, Civil 804, in the United States District Court for the District of Nevada. The order in question stays further proceedings in Civil 804 until after final disposition of a proceeding then pending before the Na-

tional Labor Relations Board (Board). The latter proceedings, in which Local 525 is the respondent, is Board docket No. 20–CB–1396.

Civil 804 is an action for specific performance, brought by Local 525 against Reynolds pursuant to section 301 of the Labor-Management Relations Act of 1947, 61 Stat. 156, as amended, 29 U.S.C. § 185 (1964). The specific relief requested is an order requiring Reynolds to enter into arbitration proceedings with Local 525, pursuant to the grievance procedure provided for in a collective bargaining agreement between the parties. The agreement, which was executed on August 13, 1963, and covers the period from July 1, 1963 to June 30, 1966, relates, in general, to employees of Reynolds, represented by Local 525, working at the Nevada Test Site, Nevada.[1] The agreement incorporates by reference the provisions for wages and funded fringe benefits contained in the agreement of July 1, 1963, between the Associated Plumbing and Air Conditioning Contractors of Nevada, Inc., and Local 525.

Local 525 contends that the August 13, 1963 agreement covers maintenance and operations employees as well as construction employees. Reynolds contends to the contrary. This is the question which Local 525 seeks to arbitrate. Reynolds denies that the arbitration provision of the agreement of August 13, 1963 covers such a dispute, and has declined to arbitrate thereunder. In Civil 804, Local 525 seeks to compel such arbitration.

But while Reynolds denies that the August 13, 1963 agreement covers maintenance and operations employees, it in fact gave such employees all of the benefits of that contract up to July 1, 1965. This included a forty-five cent per hour increase in wages, and certain additional

---

1. Contemporaneously with the execution of the agreement of August 13, 1963, Local 525 and Reynolds executed a document entitled "Memorandum of Intent." In this document the parties express their intention to enter into negotiation and negotiate a Project Agreement which will cover the maintenance and operations portion of the work covered by Article II

of the collective bargaining agreement of the same date. According to this Memorandum of Intent, negotiations between the parties would commence within one month from August 13, 1963, each party agreeing that it would work diligently and conscientiously towards concluding a Project Agreement at the earliest possible date.

funded fringe benefits which became effective on July 1, 1964. Reynolds has not given such employees the additional forty cent hourly wage increase which became effective under that contract as to other employees on July 1, 1965. In declining to give maintenance and operations employees this additional increase, Reynolds reasoned that even if these workers were covered by the August 13, 1963 agreement, they were not covered thereunder after June 30, 1965.

The circumstances which Reynolds asserts justify this conclusion are as follows: for many months after execution of the August 13, 1963 agreement, Reynolds and various labor unions, including Local 525, engaged in joint negotiations for a single Project Agreement covering maintenance and operations work (as distinct from construction) performed by Reynolds' employees at the Nevada Test Site. According to Reynolds, by April 27, 1965, the negotiating parties were on the threshold of a final agreement, but then Local 525 repudiated the negotiations and refused to participate further therein. Reynolds and the other unions proceeded with their negotiations and entered into an agreement covering the period from June 28, 1965 to July 1, 1968.

On June 23, 1965, which was twenty-nine days prior to the commencement of Civil 804, Reynolds filed with the Board an unfair labor practice charge against Local 525. Reynolds therein took the position that, by reason of Local 525's refusal to bargain for a Project Agreement covering maintenance and operations employees, as assertedly required by general law and the Memorandum of Intent referred to in note 1, the union had violated section 8(b) (3) of the National Labor Relations Act, 49 Stat. 452, 453, as amended, 29 U.S.C. § 158(b) (3) (1964).

The Board proceeding was docketed as Case No. 20–CB–1396. After hearings therein, the Board's trial examiner entered a decision on November 3, 1966, holding in favor of Reynolds. The recommended order, which is now under review by the Board, would require Local 525 to execute and give prospective and retroactive effect to the Project Agreement entered into by Reynolds and other unions, covering the period from June 28, 1965 until July 1, 1968.

It follows that, if on Board and court review, the trial examiner's recommended order is upheld, the Project Agreement contract will cover Reynolds' maintenance and operations employees represented by Local 525 as of June 28, 1965. As indicated above, those employees received all of the wages and funded fringe benefits called for under the August 13, 1963 agreement up to July 1, 1965.

In view of these circumstances, Reynolds moved in Civil 804 for an order staying further proceedings therein until final disposition of the Board proceeding. The order was granted on December 29, 1966. It is this order which Local 525 wants to have vacated.

■ Under the circumstances reviewed above, and without intending to intimate any view as to the merits of any issue in the case, we believe the district court did not abuse its discretion in staying the Civil 804 action as indicated. If the trial examiner's recommended disposition of the Board proceeding prevails, there will be little, if anything, left to decide in Civil 804. On the other hand, if the district court should now proceed with the latter action, it will be dealing with some of the same issues which are involved in the Board proceeding. In our opinion, neither Local 525 nor the Reynolds' maintenance and operations employees which it represents, will be substantially prejudiced by reason of the stay order in question.

■ Local 525 argues that the Board cannot effectively dispose of the controversy between the parties because it lacks subject-matter jurisdiction. This is true, the union argues, because the existence or non-existence of an unfair labor practice in the context of this case turns arguably upon a good faith dispute as to the correct meaning of a collective bargaining agreement.

If this is a correct appraisal of the facts and law it will be so determined in the pending Board proceeding. The Board proceeding was undertaken first and the jurisdictional question to which Local 525 refers is necessarily involved therein.

The petition for a writ in the nature of mandamus is denied.