**ELECTRICAL CONTRACTORS ASSOCIATION OF GREATER BOSTON, INC., Plaintiff,**

v.

**LOCAL UNION 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.**

Civ. A. No. 71–967.

United States District Court,
D. Massachusetts.

June 11, 1971.

Harold Rosenwald, Boston, Mass., for plaintiff.

Timothy J. Murphy, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION DISMISSING COMPLAINT

GARRITY, District Judge.

Plaintiff, Electrical Contractors Association of Greater Boston, Inc. (hereinafter referred to as the Association) brought this action against defendant Local Union 103, International Brotherhood of Electrical Workers (hereinafter referred to as the Union) under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and under the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) for a declaratory judgment under the collective bargaining contract between the Association and the Union that (1) the "assignment of men to core drilling equipment is the prerogative of the employer, except where the safety of men is involved, as determined by the Joint Safety Committee" and that (2) the failure and refusal of defendant to abide by the decision of the Joint Conference Committee constitutes a breach of the contract; and for an injunction enjoining the Union from requiring the assignment of two or more employees of any member of the Association to core drilling equipment unless and until the Joint Safety Committee determines that the safety of men is involved. An evidentiary hearing was held on May 20 and 21 on plaintiff's prayer for a preliminary injunction. At its conclusion plaintiff expressed a willingness to have the case decided on the merits on the basis of the evidence offered at the hearing. Defendant reserved the right to introduce further evidence at a later hearing on the merits. However, no useful purpose would be served by hearing further testimony on this matter,[1] and the court has treated the May 20–21 hearing as a consolidated trial on the merits in accordance with Fed.R.Civ.P. 65(a) (2). On the basis of evidence adduced at this trial and memoranda of the parties, the court

1. The only evidence which the defendant stated it would offer at a later trial on the merits was of injuries received by men assigned singly to core drilling and the size of the core drill used. In our opinion neither item would be material.

makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff is an association of employers engaged in the electrical contracting business in Boston and vicinity. Defendant is a labor organization representing employees in the electrical contracting industry, an industry affecting commerce.

2. In August 1970 a dispute arose between the Association and the Union. The Union took the position that the use of a single employee on most core drilling operations was a safety hazard and recommended to its members that two men should be used on such operations. The Association insisted that the determination of whether one or two men should be used on a particular core drilling operation was a prerogative of management.

3. The local shop stewards interpreted the Union's recommendation to mean that no core drilling would be carried on unless two men were assigned to such work. Since the core drilling operation is critical to the progress of the electrical contracting job, the employer members of the Association acceded to the Union's recommendation, but only under protest.

4. The Joint Conference Committee, authorized under Article 1–3(b) of the collective bargaining contract between the parties consists of three Union and three employer members. At the August 24, 1970 meeting of the Joint Conference Committee, several employer members of the Association protested the use of two men on core drilling machines. After a lengthy discussion by both sides, a motion to refer the dispute to the Joint Safety Committee, authorized by Article 6–17 of the collective bargaining contract, for a ruling on safety, was proposed and voted on. A deadlock resulted, three for and three against.

5. On October 27, 1970 a meeting of the Joint Safety Committee, which also contains three union and three employer members, was held. After some discussion of the core drilling dispute, a motion was made, seconded and passed to suspend any action for one month while all members became familiar with the situation and machines. On January 7, 1971, at another meeting of the Joint Safety Committee, the members discussed their personal observations of the operation of core drilling machines, but no action was taken.

6. On February 23, 1971 the Joint Conference Committee met. The subject of the core drilling controversy was brought up at the end of the meeting. A management representative moved that "the assignment of men to core drilling equipment is the prerogative of the employer." A union representative inserted the following amendment: ", except where safety of men is involved." Another company representative added a third clause: ", as determined by the Joint Safety Committee." This motion as amended was voted on and passed unanimously. The whole process, including discussion, took five or ten minutes. The minutes of the meeting read as follows:

> "Moved and voted that the assignment of men to core drilling equipment is the prerogative of the employer, except where safety of men is involved, as determined by the Joint Safety Committee."

7. After the passage of this resolution, the Union continued to "recommend" two men on core drilling operations; and the employers continued to use two men under protest. The Joint Safety Committee was not convened to determine safety standards. In fact, the only change from the *status quo ante* was the institution of this lawsuit.

8. The employers have suffered and are suffering substantial damage in increased labor costs as a result of the use of two men instead of one on core drilling operations.

## Conclusions of Law

■ This case presents the persistent and abiding problem of reconciling the conflicting policies of the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104, and § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), which provides for suits for violation of contracts between an employer and a labor organization. In the area of labor injunctions, the anti-injunction policy of Norris-La-Guardia is deemed to be the rule and the exceptions to this policy to be narrow, see Boys Markets, Inc. v. Retail Clerks' Union, 1970, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. With respect to its claim for injunctive relief, i. e., that the defendant union be enjoined from requiring employers to use two men on core drilling operations, plaintiff contends that the decision of the Joint Conference Committee on February 23 was an "award" enforceable by court order.

■ Under United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, it is clear that an arbitration award is enforceable by court order despite the strictures of Norris-La-Guardia. Plaintiffs do not argue that the February 23 decision of the Joint Conference Committee was an arbitration award. However, the Supreme Court has held that compliance with an award of a joint employer-union committee may be compelled if the decision of such a committee is made "final and binding" by the grievance provisions of the collective bargaining contract. General Drivers, Warehousemen and Help-

ers, Local Union No. 89 v. Riss & Co., 1963, 372 U.S. 517, 83 S.Ct. 789, 9 L. Ed.2d 918. Thus, the primary question before this court is whether the February 23 decision of the Joint Conference Committee was an enforceable award within the meaning of the *General Drivers* case.

Article 1–3(b) [2] of the contract states in part that the Joint Conference Committee "shall sit in judgment on all complaints and on all interpretations of this Agreement" and that "its decision shall be final and binding upon both parties hereto." Thus it is clear that the Joint Conference Committee has the power under the contract to render a decision in the nature of an award enforceable by court order within the meaning of *General Drivers, supra*. The question becomes whether the February 23 decision of the Joint Conference Committee was such an award.

■ Most of the cases concerning the nature of an "award" have arisen in the context of an arbitration proceeding. However, the cases following *General Drivers* have treated an "award" of a Joint Conference Committee analogously to that of an arbitration award. See, e. g., Bieski v. Eastern Automobile Forwarding Company, 3 Cir., 1968, 396 F.2d 32, 37. Under generally accepted principles, certainty is an indispensable element to the enforceability of an award, i. e., an award must be sufficiently definite so that only ministerial acts of the parties are necessary to carry it into effect. Mercury Oil Refining Company v. Oil Workers Int. Union, CIO, 10 Cir., 1951, 187 F.2d 980; 6 C.J.S. Arbitration

---

2. "There shall be a Joint Conference Committee of three (3) representing the Union, and three (3) representing the Employers. It shall meet regularly at such stated times as it may decide. It shall also meet within forty-eight (48) hours after notice is given by either party. It shall select its own Chairman and Secretary. It shall also retain the services of such person or persons as may be reasonable or necessary in carrying out its functions and duties under this Agreement. Said Conference Com-

mittee shall sit in judgment on all complaints and on all interpretations of this Agreement. Its decision shall be final and binding upon both parties hereto. The Joint Conference Committee shall have the additional function of coordinating, advising, and assisting in the administration of the Health and Welfare Fund, the Pension Fund, Vacation and Holiday Fund, Annuity Fund, and other activities of mutual interest to both Employer and Employee."

and Award § 84. In order to accomplish the purpose of eliminating future disputes and litigation, an enforceable award must also be final and complete and leave no doubt as to the manner in which it is to be made effective. *Mercury Oil Refining Company, supra*; 6 C.J. S. Arbitration and Award § 81. Unlike the award in *General Drivers* which directed individual employees to be reinstated with full seniority and back pay, the February 23 decision of the Joint Area Committee is neither "certain" nor "complete" but appears to state a principle of general applicability. Thus, the court concludes that the February 23 decision is not an enforceable award within the meaning of *General Drivers,* and plaintiff's prayer for injunctive relief is denied.

The prayer for declaratory relief requests the court to declare that (1) the "assignment of men to core drilling equipment is the prerogative of the employer, except where the safety of men is involved, as determined by the Joint Safety Committee" and (2) the failure and refusal of defendant to abide by the decision of the Joint Conference Committee constitutes a breach of the contract. With respect to the appropriateness of declaratory relief, it is necessary to ascertain what, if anything, the Joint Conference Committee accomplished on February 23 when it considered the core drilling controversy and voted:

> "Moved and voted that the assignment of men to core drilling equipment is the prerogative of the employer, except where safety of men is involved, as determined by the Joint Safety Committee."

Under Article 1–3(b) of the contract, the Committee was empowered to judge and decide "all interpretations of this Agreement." Thus, in a broad sense, the Joint Conference Committee may have been rendering an interpretation of the Agreement by reading into it a "common law" principle of industrial relations in the electrical contracting industry in Boston. Another reading is that the Committee vote of February 23 constituted an agreement to a change in the contract under Article 1–2 which states that "changes may be made at any time by mutual consent." Under either of these two interpretations, and both seem plausible, the case in its present posture is not ripe for the granting of the declaratory relief requested.

■ With respect to the first prayer for declaratory relief, there is no dispute between the parties.[3] With respect to the second prayer for declaratory relief, to grant it would in our view amount to a bypassing of the grievance and arbitration provisions of the collective bargaining contract. If the February 23 resolution be regarded either as an interpretation of the contract or as a change in the contract, the specific complaint about the Union's position on core drilling operations brought before the Joint Conference Committee initially on August 24, 1970 remained unresolved. If the Joint Conference Committee fails to agree on a solution of the specific pending dispute, the employers must resort to binding arbitration of the matter under Article 1–3(c) and (d) of the contract.[4] Only after the Union has refused to obey a genuine award of the Joint Conference Committee under Arti-

---

3. Both the Union and the Association agree that this language was moved and voted on by the Joint Conference Committee on February 23, 1971. The dispute concerns the meaning and effect of this language.

4. "(c) Whenever the Joint Conference Committee fails to agree or settle questions regarding changes in this Agreement, the matter shall be determined through arbitration mutually agreed upon, and its decision shall be final and binding.

"(d) Whenever the Joint Conference Committee fails to agree upon a form of arbitration by mutual agreement, then the case shall be referred to The Council on Industrial Relations for the Electrical Construction Industry of the United States and Canada."

cle 1–3(b) or of an arbitrator chosen in accordance with Article 1–3(c) or (d) would the case be ripe for judicial relief. Therefore the plaintiff's prayers for declaratory relief are denied.[5]

Accordingly, an order will be entered dismissing the complaint.

5. Of course, perhaps the simplest and most effective method of resolving this controversy is for the Joint Safety Committee to meet and iron out safety standards for core drilling operations.