**The CHIEF FREIGHT LINES COMPANY, Plaintiff-Appellee,**

**v.**

**LOCAL UNION NO. 886 and Southern Area Conference of International Brotherhood of Teamsters, etc., Defendants-Appellants,**

**and**

**National Labor Relations Board, Intervenor.**

No. 74–1291.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 13, 1974.

Decided April 8, 1975.

---

Frank B. Wolfe, III, Tulsa, Okl. (Richard L. Barnes, Kothe & Eagleton, Tulsa, Okl., on the brief), for plaintiff-appellee.

L. N. D. Wells, Jr., Dallas, Tex. (Edward B. Cloutman, III, and Mullinax, Wells, Mauzy & Baab, Inc., Dallas, Tex., and George McCaffrey, Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, Okl., on the brief), for defendants-appellants.

Robert Fulton Dashiell, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Abigail Cooley, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for intervenor.

Before MURRAH, HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Teamster Local No. 886 (the Union) and the Southern Area Conference of International Brotherhood of Teamsters (the Conference) appeal from a preliminary injunction against striking and related actions entered under Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, on application of appellee, The Chief Freight Lines Company (Chief or the Company). The National Labor Relations Board (NLRB or the Board) has intervened.

The parties raise three principal questions: (1) whether there were procedural errors or jurisdictional defects in the District Court proceedings requiring reversal; (2) whether the District Court properly held ineffective a stipulation for arbitration and held the arbitral decision under it not final or binding; and (3) whether the injunction is barred by the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., or may come within the exception recognized in *Boys Markets,* where further arbitration is stayed pending completion of NLRB proceedings. With these questions we also consider contentions raised by the Board and the effect of pending proceedings before it. We conclude that the injunction, accompanied by a stay against arbitration proceedings, cannot stand. We therefore must vacate and remand.

Chief is a Class A common carrier of general commodity freight with terminals in Oklahoma City, Tulsa, Dallas, Fort Worth and Kansas City. The Union at all times relevant to this case has represented drivers and other employees at Chief's Oklahoma City Terminal. It is one of a number of locals in nine southern states that constitute the Conference.

The labor dispute concerns representation of approximately eight office employees in Chief's Oklahoma City Terminal. These employees had not been represented by any union prior to this dispute. Appellants claim that on June 8, 1973, Union officials submitted to Chief a sufficient number of signed authorization cards to entitle the Union to immediate recognition as the bargaining representative of the office employees. The Company, however, has refused to so recognize the Union, contending that the card presentation procedure provided by the collective bargaining agreement did not apply to it in this case, because it was not a "prior signator" to a supplemental agreement covering office employees so as to make the said recognition provisions of the NMFA applicable.

The card recognition provisions in question appear in Article 2, Section 3, of the National Master Freight Agreement, 1970–1973 (the NMFA).[1] At the time of this dispute, Chief and the Union were signatories to the NMFA and the Local Freight Forwarding Pickup and Delivery Supplemental Agreement (the Supplemental Agreement) covering drivers and other employees at the Oklahoma City Terminal.[2] Chief was not, however, a signatory to a supplemental agreement covering office employees.

After the June 8, 1973 card presentation, a series of fruitless discussions ensued between the Company and the Union. Failing to gain the recognition it sought, the Union, and other Teamster Locals set up picket lines at Oklahoma City and other Chief terminals on June

---

1. Article 2, Section 3, provides in pertinent part:

 When a majority of the eligible employees performing work covered by an Agreement designated by the National Negotiating Committee to be Supplemental to the National Master Freight Agreement (to which their Employer is a prior signator), execute a card authorizing a signatory Local Union to represent them as their collective bargaining agent at the terminal location, then, such employees shall automatically be covered by this Agreement and the applicable Supplemental Agreements.

2. The NMFA operates only in conjunction with any of several supplemental agreements, each of which covers work performed within the classifications defined and set forth in the supplemental agreements. The NMFA and the appropriate supplemental agreement together constitute the collective bargaining contract between the parties. See Articles 1 and 2, NMFA, and Article 40 of the Supplemental Agreement, Joint Exhibit No. 1.

22.[3] Drivers and other Teamster members refused to cross the picket lines, effectively shutting down operations at those terminals.

On June 25, 1973, Chief filed in the District Court a verified complaint and a motion for a temporary restraining order under § 301 of the Act, 29 U.S.C.A. § 185(a). At a hearing on June 26 Chief argued for the restraining order under the *Boys Markets* exception to the Norris-LaGuardia Act, claiming that the representation issue arose under the NMFA and that it was subject to mandatory arbitration under Article 8 thereof. On the basis of the verified complaint and the statements of counsel, the Court entered the order which decreed an end to the picketing and work stoppage until a further hearing scheduled on July 2.

Hearings were held on July 2 and 3 and during these proceedings the parties agreed upon a settlement stipulation. The stipulation called for withdrawal of the court action and provided instead for arbitration pursuant to the collective bargaining agreement. On filing of the stipulation, the Court dismissed the action without prejudice.

Following the dismissal, the Union initiated the arbitral procedure by submitting a grievance to the Southern Area Multi-State Grievance Committee (the Multi-State Committee) on July 3, 1973 (A 135). On August 20, this Committee deadlocked 3–3 and referred the grievance to the next arbitral level, the Southern Area Conference Grievance Committee (the Area Committee). The Area Committee heard the case on January 28, 1974 and on January 31 issued the following decision:

> Local Union 886 will present to the Employer authorization cards for verification. If Local Union 886 represents a majority of the affected employees that were employed as of 6–8–73, the Employer is instructed to apply the National Master Freight Agreement, and the Southern Area Local Freight Forwarding Office Clerical

Employee Supplemental Agreement; cost to the Employer. (A 144).

A dispute arose and still continues about this arbitral decision. Chief contended and still maintains that the arbitral procedure was not exhausted; that the interpretation issue whether Chief was a "prior signator" under Article 2, Section 3, of the NMFA had not been reached and must be submitted to the National Grievance Committee (A 69–70; 397–99); and that the decision awarded was itself ambiguous (A 69–70, 398), and refused to implement it. Appellants, on the other hand, say the decision is unambiguous and is the final and binding determination contemplated by the stipulation, and that resolution of the interpretation issue, requiring submission to the National Grievance Committee, was not provided for by the stipulation (A 68–69; Brief for Appellants 7). On Chief's refusal to implement the arbitration decision the Union threatened to strike.

Following the strike threat, Chief returned to the District Court on February 11, 1974, and moved to reopen the dismissed case and applied for a temporary restraining order and a preliminary injunction. The Court reopened the case and, from the verified applications, found that irreparable injury would result to Chief, its employees and the public unless a temporary restraining order against striking and similar acts was immediately entered. A restraining order was entered and the Court set a hearing on the application for a preliminary injunction for February 19. Later, on application of the appellants, the hearing was rescheduled for February 27.

Before the case was reopened, a representation petition was filed by a rival union, The Fifth Wheel Employees' Association (the Fifth Wheel) on January 28. The Fifth Wheel sought to represent the same 8 office employees in question. Chief asked that the temporary restraining order include a stay of arbitral proceedings in view of the conflicting claims for representation. The

---

**3.** The record does not make clear whether all five terminals were picketed or only four.

Compare Appendix (hereafter A) A 391 with A 229, 230 and 231.

stay was included in the order. The Board moved to intervene before the February 27 hearing and also requested a stay pending final resolution by it of the representation proceedings and unfair labor practice charges filed by the appellant Union and the Fifth Wheel.[4]

At the hearing on February 27, 1974 the District Court heard two witnesses for Chief and argument by counsel for all parties, including the Fifth Wheel and the Board. The Court stated oral findings and conclusions, and said it was ready to enter a preliminary injunction but declined, however, to do so until preparation of the written injunction. The Court continued the temporary restraining order in effect until the formal preliminary injunction was entered. Appellants filed a notice of appeal from this oral order of February 27 on March 29.

At a hearing on the preliminary injunction on April 9, the appellants took the position that the matter was on appeal and that the District Court no longer had jurisdiction to proceed. The Court stated that since no written order had been filed, there was no appealable order and that evidence would be heard.

Finally, on April 10, the Company offered proof—over appellants' objections—to support its points that the July 3 stipulation did not correctly represent the agreement of the parties; that the appellants had misled the Company into believing that it did; and that the arbitral process was not yet exhausted. Appellants declined to cross-examine the witnesses and offered no evidence, relying on objections that the Court had lost jurisdiction on filing of their notice of appeal after the oral ruling and that the testimony was outside the scope of Chief's pleadings and the February 27 hearing.

The Court then entered its written findings and conclusions and the preliminary injunction of April 10, again offering appellants the opportunity to submit testimony at a later date before a permanent injunction was entered. The record reveals no attempt by the appellants to pursue the matter further in the District Court. A supplemental notice of appeal was filed on April 22.

1. *Whether procedural error or jurisdictional defects require reversal*

 a. *The reopening of the case*

Appellants argue that the District Court erred in reopening the case on February 11, 1974. Although they present no authority in their brief to support this claim, they incorporate by reference a motion and supporting brief presented to the District Court. From these, appellants' primary contention appears to be that the Court could not reopen a case that had been previously dismissed without prejudice. They cite DeLong's Inc. v. Stupp Bros. Bridge & Iron Co., 40 F.R.D. 127 (E.D.Mo.) and other cases for the proposition that once an action has been dismissed without prejudice, the litigation is terminated and the position of the parties is as though no suit had ever been brought.

As noted in *DeLong's*, however, this status is subject to the power granted the Court under Rule 60, F.R.Civ.P. By the terms of Rule 60(b), the Court may relieve a party from a final judgment, order or proceeding. At the hearing on February 27, the Court indicated that it had acted under subsection (6) of Rule 60(b), which permits the Court to act for "any . . . reason justifying relief from the operation of the judgment." (A 294).

 The decision whether to grant relief under Rule 60(b) is a matter ad-

---

4. The following allegations of unfair labor practices were made by the Fifth Wheel:

 1. Violation of § 8(b)(1)(A), against the Union (filed February 11, 1974).
 2. Violation of § 8(a)(1) and (2), against Chief (filed February 19, 1974).
 3. Violation of § 8(a)(1), against Chief (filed February 19, 1974).

In addition, on February 15, 1974, the Union filed unfair labor practice charges against Chief, citing violation of § 8(a)(1), (2) and (5).

Subsequent to argument we were advised that the Board issued an unfair labor practices complaint in February, 1975, against Chief citing refusal to recognize the Union after the card presentation in June, 1973, *inter alia.*

dressed to the sound discretion of the trial court, Wilkin v. Sunbeam Corp., 466 F.2d 714 (10th Cir.), cert. denied, 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258, and the decision will not be disturbed except for a manifest abuse of discretion. See Caribou Four Corners, Inc. v. Truck Insurance Exchange, 443 F.2d 796 (10th Cir.). Appellants have not demonstrated, and we do not find, any abuse of discretion on the District Court's part in setting aside its dismissal order. The motion to reopen was timely made, both within the limits of the rule and under the circumstances of the case.

Appellants argue, however, that the trial court had no power to reopen since the case was dismissed before an answer was filed, citing Miller v. Stewart, 43 F.R.D. 409 (E.D.Ill.). The Court in *Miller* did not make such a broad holding. It held only that under Rule 41(a) F.R. Civ.P. a plaintiff may dismiss as a matter of right at any time prior to service by defendant of an answer or a motion for summary judgment. The Court in *Miller* viewed Rule 41(a) as curtailing the defendant's right to set aside an order of dismissal in such an instance, but did not treat the authority of the Court to do so on application of the plaintiff.

█ Appellants also allege error in the failure to serve them with process on reopening. Since we have determined that the dismissed case was properly reopened and that no new case was required to be filed, the point would seem to lack merit. However, since the reopening was initially granted here in an *ex parte* proceeding, lack of notice to the adverse party is relevant. Rule 60(b) provides that the court may act "[o]n motion." As with other motions, unless the adverse party waives notice or otherwise submits to the court's jurisdiction, notice of the motion must be given. Rule 5(a) F.R.Civ.P. The record reveals that appellants received no prior actual notice of Chief's motion to reopen (see A 21–22, 295).

█ We note, however, that the propriety of reopening was effectively argued by counsel at the hearing on February 27. After hearing the argument, the Court stated (A 296):

[I]t would be usual for me to set that order [of February 11] aside and re-enter it to comply with any technicality that I should have heard you gentlemen beforehand. . . . But I have heard [argument of the Union and the Conference] now, and if I had heard this before I reopened, I would have reopened it so I think that technicality is out of the way.

We believe that whatever error may have been committed on February 11 by the failure to give actual notice for the motion was effectively cured by the Court's affording the parties an opportunity to be heard at the hearing on February 27. Counsel for all parties appeared and were given the opportunity to argue the propriety of the re-opening, and the trial judge reconsidered the matter in view of the arguments made.

b. *The claim of loss of jurisdiction on filing the first notice of appeal*

Appellants' brief argues that on April 9 and 10, 1974 further hearings were held despite their objection that a prior notice of appeal had lodged exclusive jurisdiction in the Court of Appeals (Brief for Appellants, 13). Appellants point out that after the Court announced on February 27 that a preliminary injunction would be entered, they had filed a notice of appeal on March 29, and argue that the Court had lost jurisdiction to proceed further. The argument is not supported by authority in the brief on appeal, but since it raises a jurisdictional question we will consider the problem.

At the conclusion of the hearing on February 27, the District Court stated generally his findings and conclusion (A 323–325). The Court stated, "I enter the preliminary injunction . . . " (A 322). Later, however, he stated that the temporary restraining order entered on February 11 was continued in effect "until this order is prepared, signed and filed . . . " (A 325). The Court further said that if the appellants concluded that they wanted a hearing to put on

evidence concerning the question of a permanent injunction, that he would set one (A 322, 327). The Court did in fact set a hearing for March 5 for that purpose. (A 328).[5]

As stated, on April 9 and 10 the Court heard further proof of the Company and arguments by all counsel. On April 10 the Court entered detailed written findings and conclusions together with an injunctive order. While the order is not phrased expressly as a preliminary injunction, the Court clearly stated that he was entering a "temporary injunction," and that he wanted the findings to cover everything to that date (A 414). Again the Court made it clear that he was offering the appellants an opportunity to offer any testimony desired, and that the Court was not going to make the order permanent until he heard appellants' proof (A 414, 417). One of the Court's prime purposes, as was stated, was to afford the appellants a further opportunity to be heard and offer proof at a later date.

■ We are satisfied from the record as a whole that the Court intended to, and did on February 27, merely announce orally his conclusion to grant the preliminary injunction, but that he did not enter the preliminary injunction until April 10. The appellants' docketing statement in this Court states that the judgment or orders sought to be reviewed are: "An oral order entered from the bench in open court . . . on February 27, 1974, and the written order entered . . . on April 10, 1974, preliminarily enjoining appellants as described above." The notices of appeal from these orders were filed on March 29, 1974, and on April 17, 1974. The March 29 notice stated that the appeal was from the "Temporary Injunction Order entered in this action on the 27th day of February, 1974." (See A 359).

■ From the docketing statement and the record, we feel we should treat the order appealed from as the written injunctive order of April 10. It is the only written instrument designated by the notices of appeal or the docketing statement as being appealed.[6]

Therefore, we cannot agree that the District Court was deprived of jurisdiction by the first notice of appeal filed on March 29 which was directed to the Court's oral decision on February 27 that he would at a later date enter an injunction. Thus, there was no loss of jurisdiction due to the first notice of appeal, precluding the hearings on April 9 and 10 and further actions taken by the District Court.

2. *Whether the District Court properly held that the stipulation for arbitration was ineffective and that the arbitral decision made pursuant to it was not final and binding*

Appellants contend that the arbitral decision of the Area Committee on July 31, 1974, noted above, was a final and binding award and that Chief is obligated to respect the decision which contemplates operation of the card procedure. If appellants' position is correct, of course there is no basis for an injunction to forestall a strike while arbitration proceeds as provided for by the collective bargaining agreement.

Chief argues, on the other hand, that its counsel were misled as to the procedures that the stipulation contemplated; that the stipulation was therefore not in accord with Chief's actual intention, since it did not provide for submission of the interpretation dispute over the "prior signator" point to the National Grievance Committee; and that, in any event, the arbitral decision was ambiguous and not a final and binding award. Chief

---

5. A series of continuances subsequently occurred and the hearing was finally held on April 9 and 10.

6. A separate document is required. See Rule 58, F.R.Civ.P.; United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202;

and see United States v. Clearfield State Bank, 497 F.2d 356, 359 (10th Cir.). A preliminary injunction is a "judgment" that must be reduced to a written instrument under Rule 58. See Rule 54(a), F.R.Civ.P.

argues that a *Boys Markets* injunction to enforce the no-strike agreement is proper since further arbitration procedures are required, although the arbitration process is stayed pending disposition of the NLRB proceedings.

We will deal first with the stipulation, which the District Court held to be ineffective. The Court found that there was no mutuality of understanding between the parties with respect to the intent of the stipulation. It found that Chief and the Court were misled, unintentionally,[7] into believing that Article 7 of the NMFA and Articles 44 and 45 of the Supplemental Agreement were the only appropriate contract provisions for processing the dispute concerning the interpretation of Article 2, Section 3, of the NMFA.[8] The finding referred to Article 8 of the NMFA providing for submission of such matters to the National Grievance Committee for determination. The Court found that Chief intended in the stipulation to require the proper arbitral bodies to interpret Article 2, Section 3, as to whether or not Chief must be a prior signator to the office employees supplement before application of the provisions (including the card procedure) applied to the office employees. The Court found that the Union and Conference intended that the arbitral bodies apply the card procedure provision without considering the prior signator issue.

The District Court further found that the arbitral decision was not final and binding; that the grievance procedures had not been completely exhausted; and that the decision was also not binding in that it was ambiguous.

■ While the question is not free from doubt, we cannot say the findings were clearly erroneous. The record shows that Chief had throughout maintained its position that there was an interpretation question on the prior signa-

tor point requiring a decision by the National Grievance Committee (*e. g.*, A 225–26). Chief had never receded from this position. There was testimony, in the context of these circumstances, that counsel for appellants had assured Chief's counsel that Article 7 and Articles 44 and 45 were the only appropriate procedures. And there was testimony that reference to Article 8 had been inadvertently omitted from Chief's draft of the settlement stipulation which had been submitted to the Court. Unfortunately, the reporter was absent typing the stipulation while the statements of counsel were made in Court. However, there was testimony at the concluding hearings before the Court as to the statements made, and it was not contradicted. In view of this proof and the trial court's opportunity to observe the witnesses and recall the events (A 286), we cannot say the findings are clearly erroneous. See Rule 52(a) F.R.Civ.P.; Williams v. Eaton, 468 F.2d 1079 (10th Cir.).

■ Furthermore, we find no error in the finding that the arbitral decision was ambiguous and not binding. As noted, it provided for the presentation of cards to Chief, but did not specify whether they would be the cards previously presented in June, 1973 or new cards obtained after the January, 1974 arbitral decision (A 144, 69–70, 40). We must agree that this point is substantial and that the arbitral decision is ambiguous and unclear as awarded. See Mercury Oil Refining Co. v. Oil Worker's International Union, 187 F.2d 980, 982 (10th Cir.); Electrical Contractors Association of Greater Boston, Inc. v. Local Union 103, 327 F.Supp. 1177 (D.Mass.), aff'd, 1st Cir., 458 F.2d 590.

In sum, we sustain the trial court's findings that the stipulation was ineffective and that the arbitral decision was not final or binding. We therefore re-

---

7. In his oral findings, the trial judge made it clear that he did not believe that counsel intended to make any misleading statement (A 323–24).

8. This dispute concerned whether Chief was required to be a "prior signator" to a supple-

mental agreement covering office employees before it was bound by the card procedure requirement. The Court found that Chief was not a prior signator to the supplement covering office clerical employees.

ject the argument of appellants that the arbitral decision, reached pursuant to the stipulation, was final, making it improper to entertain an application for an injunction. We, therefore, must consider whether this injunction was proper as issued under the *Boys Markets* exception.

3. *Whether the injunction is barred by the Norris-LaGuardia Act or may come within the exception recognized in Boys Markets since further arbitration is stayed pending completion of NLRB proceedings*

Appellants' primary argument on this appeal is that the preliminary injunction violates the Norris-LaGuardia Act. They point to the statute's jurisdictional bar against any injunction of striking, picketing and similar activity in a case involving a labor dispute. See 29 U.S. C.A. §§ 101 and 104(a) and (i). The District Court noted the statutory prohibition, but concluded that the injunction was permitted under the exception recognized in Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. See Conclusion of Law 5 (A 111). Since the preliminary injunction entered did expressly prohibit striking, picketing and similar acts covered by the statute, see 29 U.S. C.A. § 104(a) and (i), we must consider with care whether the injunction was justified under the "narrow exception" in *Boys Markets*. Id. at 253, 90 S.Ct. 1583.

The essential requirements for issuing an injunction under *Boys Markets* are that there exist a collective bargaining contract containing a mandatory grievance or arbitration procedure, and that the Union be under a contractual duty not to strike. Id. at 253–54, 90 S.Ct. 1583. Gateway Coal Co. v. U. M. W., 414 U.S. 368, 380–84, 94 S.Ct. 629, 38 L.Ed.2d 583. Here both conditions were met. The NMFA and the Supplemental Agreement in effect between the Company and the Union at the time this dispute arose imposed a mandatory duty to arbitrate on both parties, and a no-strike obligation on the Union. See Article 8, NMFA; Article 45, Supplemental Agreement.

The difficulty, however, is that the injunction also stayed arbitral proceedings.[9] Chief and the Board sought such a stay of arbitration, pending resolution of the Board proceedings on the representation petition of the Fifth Wheel and the unfair labor practice charges. The Court concluded that further processing of the dispute between Chief and the Union and the Conference would violate Chief's obligation to maintain strict neutrality in view of the representation petition pending before the Board, citing Southern Conference of Teamsters v. Red Ball Motor Freight, Inc., 374 F.2d 932 (5th Cir.). The Court's conclusions also stated that the determination to be made by the arbitral bodies involved issues pending before the Board, and that the Board's decision must prevail, citing Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246. Accordingly, the Court ordered a stay of the processing of the "interlocutory grievance decision" of the Area Committee.

We are convinced that an injunction enforcing a no-strike provision but staying arbitration is improper under *Boys Markets*. While the Court in *Boys Markets* was able to accommodate § 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104, with § 301 of the NLRA to allow an employer to enjoin a union strike in violation of a no-strike clause, the Court emphasized that its holding was narrow. Id. 398 U.S. at 253, 90 S.Ct. 1583. It premised such an injunction on its necessity to enforce the mandatory arbitration provision that had been bargained for between the employer and the union. Since, as the Court stated, a no-strike clause is the employer's *quid pro quo* for

---

**9.** The order did state that it was conditioned on Chief's proceeding promptly with grievance procedures "when and if the temporary stay of the grievance processing is lifted by failure of the Intervenor to resolve the question concerning representation." Nevertheless, an indefinite stay of arbitration was imposed, subject only to this quoted limitation.

undertaking the obligation to arbitrate, the Court felt that the employer was entitled to an expeditious procedure for enforcing the union's promise not to strike. The Court pointed to the illogic of "the unavailability of equitable relief in the arbitration context." Id. at 253, 90 S.Ct. at 1593. However, before any injunction may issue, the district court must hold that the dispute is over a grievance that both parties are contractually bound to arbitrate. And the principles adopted include the proviso that "the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike." Id. at 254, 90 S.Ct. at 1594. See also Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586, 591 (2d. Cir.).

The employer's undertaking to arbitrate is recognized as the essential motivation for the union's agreement not to strike. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403; Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972. Here, Chief has sought an injunction to compel specific performance of the Union's no-strike clause. Yet, at the same time, it says it cannot now proceed with arbitration. We conclude this position is untenable when Chief also seeks an injunction under *Boys Markets* against a strike.

It is Chief's position that the possibility of its committing an unfair labor practice by continuing arbitration with the Union is sufficient justification to release it from the condition of arbitration mandated in *Boys Markets*. Citing Midwest Piping and Supply Co., 63 NLRB 1060, Chief argues that there is a "real question concerning representation" presented by the claims of the two unions and that its duty in such situations is strict neutrality. See also Shea Chemical Corporation, 121 NLRB 1027. Further, citing Southern Conference of Teamsters v. Red Ball Motor Freight, Inc., 374 F.2d 932 (5th Cir.), Chief claims that this duty of strict neutrality specifically prohibits it from arbitrating with one of two competing unions.

Arguing on different grounds,[10] the Board asserts that the dispute poses questions concerning fundamental rights granted employees under § 7 of the NLRA, 29 U.S.C.A. § 157, and the Board's exclusive power to resolve unfair labor practices (NLRB Brief at 7). In determining whether unfair labor practices have in fact been committed, the Board claims that it will be resolving the very issue posed in the arbitration proceeding. Whichever way the Board rules, its decision would take precedence over any arbitration award. On the basis of an asserted principle of comity, which would avert potential conflict between the Board's processes and the arbitration award, the Board urges the Court to affirm the stay of arbitration, pending Board determination of the representation issue.

Even assuming that continued arbitration would be a violation of the neutrality imposed by *Midwest Piping* and subsequent cases,[11] we cannot accept Chief's

---

**10.** The Board does not assert that continued arbitration would be an unfair labor practice.

**11.** Whether this is so is not clear. In order for the duty of strict neutrality to attach to the employer, there must be a "real question concerning representation" posed by the competing unions. The only evidence of Fifth Wheel representation apparent in the record is the representation petition filed with the NLRB on January 28, 1974 (A 167) and the notice of a hearing to be held by the Board concerning the petition (A 169).

We need not decide whether a real question of representation is raised, because of our view that a *Boys Markets* injunction may not

issue where a stay of arbitration is sought. However, we doubt that the showing made raised a real question concerning representation. See Abrams v. Carrier Corp., 434 F.2d 1234, 1243 (2d Cir.), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545; Suburban Transit Corp. v. NLRB, 499 F.2d 78, 82 (3d Cir.), cert. denied, 419 U.S. 1089, 95 S.Ct. 681, 42 L.Ed.2d 682; NLRB v. North Elec. Co., 296 F.2d 137 (6th Cir.); St. Louis Independent Packing Co. v. NLRB, 291 F.2d 700, 704 (7th Cir.); Iowa Beef Packers, Inc. v. NLRB, 331 F.2d 176, 182 (8th Cir.); cf. District 50, UMW v. NLRB, 234 F.2d 565 (4th Cir.); NLRB v. Peter Paul, Inc., 467 F.2d 700, 702 (9th Cir.).

stay argument that this is sufficient justification to serve as another exception to the Norris-LaGuardia policy. Neither the neutrality point nor the comity consideration demonstrate, as did *Boys Markets,* that there is another statutory policy whose full execution necessarily calls for relief such as the stay *and* an injunction against striking.

In response to both the Board and Chief, appellants have argued that Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320, forecloses a stay in this case, and we find that argument persuasive. In *Carey,* the Court held that, in a representation case, arbitration of the representation issue between the employer and only one of the two competing unions was not foreclosed by primary Board jurisdiction over the same matter. While admitting that the Board's determination would take precedence over the arbitral award, the Court nonetheless determined that "the possibility of conflict is no barrier to resort to a tribunal other than the Board." Id. at 272, 84 S.Ct. at 409. See International Union of Operating Engineers, Local 279 v. Sid Richardson Carbon Co., 471 F.2d 1175 (5th Cir.). The Court acknowledged the employer's potentially difficult position if it is later determined by the Board to have recognized the wrong representative, but did not believe that such possible conflict could bar a § 301 suit to compel arbitration of the representation issue if mandated under the collective bargaining contract. *Carey,* supra, 375 U.S. at 272, 84 S.Ct. 401; see Justice Harlan's concurring opinion at 273, 84 S.Ct. at 409 and Justice Black's dissenting opinion at 275, 84 S.Ct. at 410.

We note that *Red Ball,* on which Chief relies, did not involve arbitration of a representation issue. We feel the holding that neutrality was obligatory was dependent on the facts of the case. Moreover, we believe that conformance to *Red Ball* would be particularly inappropriate here, where the Company is seeking injunctive relief to enforce the same labor contract that requires arbitration of the dispute.

We need not further discuss the Board's position at length. The cases cited by the Board in which courts have stayed § 301 suits to compel arbitration in order to allow the Board to determine the issues involved are not persuasive here. See *e. g.,* United Ass'n of Journeymen v. Foley, 380 F.2d 474 (9th Cir.). *Boys Markets* injunctions were not involved and the discretion to stay arbitration recognized in those cases may not be exercised where a court has determined that a *Boys Markets* injunction should issue against a strike.

In any event, we are satisfied that Chief may not obtain an injunction against the strike and at the same time be relieved from the duty to arbitrate. See *Boys Markets,* supra, 398 U.S. at 254, 90 S.Ct. 1583; Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586, 591 (2d Cir.). In later proceedings, should circumstances develop whereby the Company is prepared to arbitrate, and to be subject to a requirement to do so, the District Court may reconsider whether any equitable relief sought is justified and proper, along with final disposition of any remaining claims.[12]

Accordingly, the preliminary injunction is vacated and the cause is remanded for further proceedings as provided herein.

12. Chief has stated to us that if this Court should decide that the stay of the arbitral processes is improper, Chief submits that the remainder of the order should be affirmed (Brief for Appellee 46). For the reasons stated, we conclude that as an appellate court we cannot approach review of the injunction in this way. Reviewing it as entered and based on Chief's position before the trial court, we feel the order must be vacated. Whether a change of position by Chief and later circumstances may justify some injunctive order, consistent with the restrictions of *Boys Markets* and this opinion, is a question the trial court may consider on remand.