Robert E. ALLING; Robert G. Ernster; Paul F. Trost; Brian L. Zwetzig; Donald R. Giddens; Mary Lynn McCormick, Executrix of the Estate of Billy J. McCormick, Deceased, [Plaintiffs],

v.

AMERICAN TOOL AND GRINDING COMPANY, INC., a Colorado corporation; Norbert Vogler; Harry J. Faircloth; and Peter A. Scognamillo, [Defendants].

No. 79–K–1535.

United States District Court, D. Colorado.

Dec. 21, 1982.

---

James E. Mitchem, Mitchem & Mitchem, P.C., Denver, Colo., T.W. Shumway, St. George, Utah, for plaintiffs.

Robert M. Brown, Jeffrey A. Springer, P.C., Denver, Colo., for Norbert Vogler.

Leo T. Zuckerman & Michael J. Kleinman, Zuckerman & Kleinman, P.C., Denver, Colo., for Faircloth and Scognamillo.

## RULE 60(b) ORDER

KANE, District Judge.

Defendant Vogler and defendants Faircloth and Scognamillo have filed separate motions seeking relief under Rule 60(b). The motion filed by defendants Faircloth and Scognamillo adopts and incorporates defendant Vogler's motion, exhibits and brief. These motions allege misconduct on the part of the defendants' trial attorney.

Vogler's argument is the same one proposed by defendants Faircloth and Scognamillo in their motion for new trial: denial of "fundamental fairness and due process of law by being inadequately and incompetently represented by counsel, Robert E. Olsen, who had such a conflict of interest in representing all of the defendants that the representation amounted to a lack of representation." Olsen began his representation of Vogler on June 12, 1979. Vogler argues that from the face of the first pleadings, Olsen should have been aware of the conflict of interest problems inherent in representing all three parties, specifically due to the allegations by plaintiffs of (1) a conspiracy of the defendants; (2) the theory that the corporation was the alter-ego of the individual defendants; and (3) the allegations of fraudulent misrepresentations made by the defendants. Vogler says that if Olsen was not aware of the potential conflict from the face of the pleadings, he should have become aware of them upon the taking of the depositions of Vogler, Faircloth and Scognamillo. He argues that through these depositions it became obvious that these individuals, if involved at all, were involved in differing degrees.

When Vogler met Olsen for his deposition in November, 1980, Vogler maintains that he was not advised of any potential conflict of interest, and "Vogler advised Olsen that he did not like or desire to be tied with the other two codefendants. Olsen advised Vogler that personal difficulties would not solve the problem and that 'they were in this together.' At one time, Vogler alleges that Olsen advised him the plaintiffs were keeping Vogler as a defendant because they knew that he was the only defendant who had any assets and that in Olsen's opinion there was no basis for personal liability against Vogler." [Motion at page 3] In testimony Olsen denies this, but states he advised Vogler that his exposure was less than that of Scognamillo and Faircloth.

Vogler alleges that the conflict became increasingly obvious during settlement negotiations and at the trial. He says that Olsen managed to have him absent when

Scognamillo and Faircloth testified and to have Scognamillo and Faircloth absent when Vogler testified. Vogler characterizes this as "a curious highlight of the conflict."

After the trial, Olsen withdrew from representing any of the defendants prior to submitting the written summations which were ordered. Olsen then, according to Vogler, "sought to submit those arguments in writing and charging each of the defendants individually." Vogler then argues that the argument and proposed findings "submitted on behalf of Mr. Vogler, apparently by Olsen, refers minimally to putting a distance between Vogler, individually, and the actions of Faircloth and Scognamillo. Obviously, someone who represented Vogler, individually, who did not also represent Faircloth and Scognamillo would have argued somewhat more vehemently Vogler's individual position." [page 4 of the motion]

I have already determined that Olsen's actions in withdrawing his appearance, then ghost-writing the separate written summations and then attempting to re-enter his appearance on behalf of Vogler were improper. I indicated at the close of the hearing and now find that there was a clear conflict of interest in Olsen's representation of the three individual defendants and the corporation. Further, as Olsen admits, at no time did he ever advise any of the defendants of the conflict of interest or advise them to obtain other counsel or obtain their consent to his continued representation in spite of the easily perceptible conflict.

Vogler filed a notice of appeal on July 7, 1982. Accordingly, I am divested of jurisdiction to act on his Rule 60(b) motion. *Brasier v. U.S.*, 229 F.2d 176, 177 (10th Cir.1955). In order to rule favorably on such a motion I must await a remand from the Court of Appeals, but I can deny the motion without such a remand. *Aune v. Reynders*, 344 F.2d 835 (10th Cir.1965). Vogler has filed a motion to remand with the Court of Appeals.

Vogler asserts that "[t]here is no other vehicle other than Rule 60(b)(6) to pass upon issues involving the gross negligence of counsel at the trial level affecting the judgment itself." [page 5 of brief] In *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court noted that generally a party who freely selects an attorney cannot avoid the consequences of the acts or omissions of that attorney. Mr. Justice Harlan wrote:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

370 U.S. at 634, 82 S.Ct. at 1390.

There is authority for the proposition that relief can be obtained under Rule 60(b) where the conduct of counsel is grossly negligent. *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, *cert. denied,* 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964), *Garrett v. Osborn,* 164 Colo. 31, 431 P.2d 1012 (1967). Accordingly, I will make findings touching upon the adequacy of Olsen's representation of the defendants. I am somewhat reluctant to do so because I think the issues raised should be litigated in a separate action which does not require the plaintiffs at bar to endure endless delay and interminable litigation. If the present defendants seek relief for the conduct of their attorney it should be sought in another forum.

The Third Circuit said in *Boughner v. Secretary, H.E.W.,* 572 F.2d 976 (1978), that

[t]he general purpose of Rule 60, which provides for relief from judgments for various reasons, is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done. Generally, a motion brought pursuant to Rule 60

is addressed to the sound discretion of the Court and is reviewable on appeal only for abuse of discretion. However, the District Court has no discretion in considering motions predicated on the voidness of the original judgment, fraud, or other extraordinary circumstances such as the unconstitutionality of the statute, upon which the judgment was based. This Court has also cautioned that relief from a judgment under Rule 60 should be granted only in exceptional circumstances.

All courts that have addressed the issue hold that the granting of Rule 60(b)(6) relief is within the discretion of the court. "The decision whether relief should be granted under Rule 60(b)(6) is discretionary and the ruling should not be disturbed except for a manifest abuse of discretion. *Chief Freight Lines Co. v. Local Union No. 886,* 514 F.2d 572, 576–77 (10th Cir.)" *Security Mut. Cas. Co. v. Century Cas. Co.,* 621 F.2d 1062 (10th Cir.1979). It is not to be easily or freely given or the judgment may lack finality and there will be no end to litigation. "We must also consider whether relief should have been granted under Rule 60(b)(6) for 'any other reason justifying relief from the operation of the judgment.' Under this provision there is power to vacate judgments whenever such action is appropriate to accomplish justice,' *Klapprott v. U.S.,* 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 266, a 'grand reservoir of equitable power to do justice in a particular case.' *Pierce v. Cook & Co., Inc.,* 518 F.2d 720, 722 (10th Cir.) (en banc), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89." *Security Mutual, supra* at 1068.

The Second Circuit in *U.S. v. Cirami,* 535 F.2d 736 (1976) looked at a motion under Rule 60(b) and said:

The question of the extent to which the error of counsel may constitute a basis for Rule 60(b) relief is somewhat vexing. Normally, the motion would be made pursuant to Rule 60(b)(1) on the theory that counsel's error constitutes a mistake or excusable neglect. This Circuit has rather consistently refused to relieve a client

of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or the rules of the court, or his inability to efficiently manage his caseload. (citations omitted). The same rules can be found outside this Circuit as well, e.g. *Cline v. Hoogland,* 518 F.2d 776, 778 (8th Cir.1976) (collecting Eighth Circuit cases) ('Ignorance or carelessness of an attorney is generally not cognizable under Fed.R.Civ.P. 60(b);). This approach is supported by the opinion of Mr. Justice Harlan for the Court in *Link v. Wabash R.R.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962).

■ I have reviewed the record in this case with a gimlet eye. I am satisfied that the representation provided to these defendants by Olsen was not grossly negligent. He was vigorous in asserting the defense. He was prepared on the law and the facts. There is no indication that he withheld any evidence or that he presented evidence which he would have withheld had he represented only one client.

When reviewed from the perspective of the plaintiffs or from the bench, it appeared throughout the trial that the defendants had adopted a strategy of common defense. Such a strategy is not uncommon. I am not inclined to say that any one of the defendants would have been better off by breaking away from the denial of any wrongdoing and attempting to defend by pointing the finger at co-defendants.

As I saw the case each defendant was involved and each stood to benefit from the efforts of all. The defendant Vogler now attempts to assert that his involvement was minimal and thus he is not as culpable. This position is not tenable. Without Vogler this case would never have happened. I will not permit him to exculpate himself from responsibility for the acts of the others which he put in motion. The same is true for Faircloth and Scognamillo. Their defense was neither a sham nor a farce. It did not amount to a lack of representation.

Stated as succinctly as possible, Faircloth and Scognamillo promoted this scheme and the plaintiffs were persuaded to invest on the basis of Vogler's highly vaunted skill and success. Vogler knew it. He even talked with some of the plaintiffs. The evidence is replete with references to Vogler's machine works, property and business acumen. It is the very essence of the means by which these plaintiffs were picked clean.

Granting the defendants relief under the circumstances of this case would cause grave injustice to the several plaintiffs. It would not be possible for an opposing party to discover in advance of trial the particular arrangements which have been made between the opposing parties and their counsel. The nature of the relationship and the theories of defense and trial tactics are clearly privileged. The plaintiffs in this case could not come before the court and say, "It looks to us like the opposing counsel has a conflict of interest and we demand that he disclose to us whether he has advised his clients of the conflict and that nevertheless they desire him to proceed." Such a statement is refuted by its mere utterance. Yet, that is precisely the kind of burden which would be placed upon parties in litigation if Rule 60(b) relief were afforded under the circumstances here presented.

Finally, there is an even stronger policy consideration for denying the requested relief. There must be an end to litigation. The plaintiffs, who have done absolutely nothing wrong, should not be required to bear the burden and expense of another trial. Especially in cases such as this where liability is clear, parties should not be permitted to go through a lengthy trial on the merits and then, being dissatisfied with the result, disavow their attorney and escape liability.

It has been mentioned in some of defendants' moving papers that by striking their ghost-written final summations I somehow did not give defendants full and fair consideration. It should be obvious to anyone that before I could strike the pleadings, as Rule 11 directs me to do, I first had to study them carefully in order to determine that they were indeed sham and false. Secondly, while I made considerable use of plaintiffs' proposed findings, I made numerous significant changes. I rejected substantial parts of it and wrote others without benefit of assistance by any counsel.

It was the evidence which persuaded me and the law which guided me to reach my decision in this case. The personalities and conduct of counsel did not turn me to one side or the other.

For the foregoing reasons, the motions for relief under Rule 60(b) are denied.