## MERCURY OIL REFINING CO. v. OIL WORKERS INTERNATIONAL UNION, CIO, et al.

## OIL WORKERS INTERNATIONAL UNION, CIO, et al. v. MERCURY OIL REFINING CO.

Nos. 4143, 4144.

United States Court of Appeals
Tenth Circuit.

March 17, 1951.

Leon Shipp, Oklahoma City, Okl., for appellant.

Lindsay P. Walden, Denver, Colo., Wayne Quinlan and William N. Christian, Oklahoma City, Okl., for appellees and cross-appellants.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The Oil Workers International Union, CIO, a labor organization representing employees of the Mercury Oil Refining Company, and Roy Goodall brought this action against the company to enforce a purported award made by an arbitration board constituted under an arbitration clause in a collective bargaining agreement.[1] The company contended that this award was ineffective and asked that a prior award of the same board be enforced. The trial court held that both awards were without effect and directed further arbitration proceedings. D.C., 89 F.Supp. 702. Both parties have appealed.

The dispute submitted to the arbitration board grew out of the discharge of Goodall from the employ of the company. On February 21 and 22, 1949, the board investigated the dispute and heard evidence of the parties. On February 26, a decision was agreed upon by the company representative and the neutral member who had been selected in accordance with the terms of the contract. It was signed by these two members and delivered to the parties.

1. Pertinent provisions of the contract are:

"Section 1. For the purpose of adjusting grievances and disputes which may arise, it is agreed that the following procedure shall govern:

"(a) The employee shall first seek adjustment with the Superintendent under whom he is employed.

"(b) If the employee fails to secure an adjustment, he may submit his grievance to the Workmen's Committee.

"(c) The Workmen's Committee may take the complaint up in writing with the General Manager, who shall be given five (5) days, Saturdays and Sundays excluded, to investigate and then shall discuss same with the Workmen's Committee at the next regular meeting, at which time he shall render a written decision. The Committee, failing to agree with this decision, the complaint shall progress to the next stage.

"Section 2. In the event that any grievance or dispute shall arise which cannot be settled by and between the two contracting parties, the dispute shall be submitted to arbitration and in the following manner: Each party shall select an arbitrator within five (5) days after notice of arbitration has been given by one party or the other. The two arbitrators shall select a third arbitrator within five (5) days thereafter. This time may be lengthened or shortened by mutual agreement. In the event of failure by both parties to agree to the nomination of a third arbitrator, the third arbitrator shall be appointed by the Bureau of Conciliation, United States Department of Labor. The decision of the Board of Arbitration shall be binding and final. Normal procedure as to taking of testimony and presentation of argument shall apply. The Company assumes and agrees to pay, in the event of arbitration proceedings, the cost of its arbitrator; the Union assumes and agrees to pay the cost of its arbitrator. The cost of the third arbitrator and any other costs arising out of the arbitration proceedings will be borne equally by the Company and the Union."

This decision was to the effect that Goodall should not have been discharged but demoted without pay. It also directed that Goodall be reclassified and given employment by the company without designating what that employment should be.[2] The union, Goodall, and the union representative, complained about the decision and without further hearing or the taking of additional evidence the union representative and the neutral member undertook to rewrite and modify the former award. On March 21, 1949, they executed and delivered another award which in part reversed the former. This decision provided that the discharge of Goodall should be modified to demotion and named the position to which he should be employed. It further directed that he be paid his wages from the date of discharge less income received from other sources after the discharge. It is this award that the union and Goodall seek to enforce.

The different actions of the arbitration board present two questions: 1. Was the first award sufficiently definite to be enforced? 2. After the publication of the first award did the board have authority to enter the second award?

■ Arbitration is designed to settle controversies and disputes between parties by a method other than through the regularly established tribunals of justice. Its purpose is to eliminate future disputes and litigation. To accomplish this, decisions arrived at by arbitrators must be final and complete and leave no doubt as to the manner in which they are to be made effective. The award need not be in technical or exact language but certainty is an essential and indispensable element to its validity. It must be sufficiently definite that only ministerial acts of the parties are needed to carry it into effect. 3 Am.Jur., Arbitration and Award, Sec. 125; 6 C.J.S., Arbitration and Award, § 84, p. 231; Baldwin v. Moses, 319 Mass. 401, 66 N.E.2d 24; McInnish v. Lanier, 215 Ala. 87, 107 So. 377; In re E. A. Laboratories, Sup., 50 N.Y.S.2d 222; Albert v. Goor, 70 Ariz. 214, 218 P.2d 736. It is clear that this first award does not meet the requirements necessary to make it effective. It did no more than say that Goodall should be reinstated to such employment which he was competent and capable of doing. The classification and the nature of the employment was left entirely to the judgment of the company. It did anything but eliminate future disputes and litigation. The employment offered by the company was promptly rejected by the union and Goodall who were willing to accept the demotion fixed by the subsequent action of the arbitration board.

2. "1. The Board unanimously finds from the evidence as related herein that Mr. Goodall was not a safe employee as a Stillman and that the Company was justified in removing him from this classification.

"2. The Board further finds from the evidence that Mr. Goodall was promoted to the position of Stillman on February 1, 1946, as the result of a conference between the working committee of the Union and the Superintendent of the plant; that he was to be given a reasonable length of time to determine his competency for this job.

"3. That at the time Mr. Goodall was reclassified the Union insisted that he be given the job, or a chance to determine his competency therefor, but the Superintendent of the plant was of the opinion at the time that Mr. Goodall was not a competent employee and could not hold the job.

"4. The Board finds from the evidence that Mr. Goodall never did qualify for the job and was never a safe employee in this position, by reason of which he should have been demoted and given a job in some lesser classification for which he possessed the necessary skill and competency.

"5. The Board further finds that by reason of the foregoing Mr. Goodall should not have been discharged but should have been demoted and given employment in some other classification.

"It is, therefore, the decision of the Board based upon the evidence and finding of the facts, as above set forth, that the discharge of Roy Goodall dated December 2, 1948 should be and the same is hereby modified to a demotion without pay.

"It is the further order and decision of the Board that he be reclassified and given such employment by the Company which he is competent and capable of doing."

The first award purported on its face to be complete and final. It did not indicate in any manner that the arbitrators had not settled the questions submitted to them or that there was any intention to reserve to themselves any matters for further or future consideration and determination. The neutral member testified that he prepared the original award, signed it and understood that it would be final and a binding award if another member of the board signed it.[3] Oklahoma has no statute providing for proceedings when arbitration is agreed upon. Labor contracts are specifically excluded from the federal arbitration act. 9 U.S.C.A. § 1. International Union etc., v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33; Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311, certiorari denied 327 U.S. 777, 66 S.Ct. 522, 90 L.Ed. 1005; Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876. It is a general rule in common law arbitration that when arbitrators have executed their award and declared their decision they are functus officio and have no power or authority to proceed further. City of St. Charles v. Stookey, 8 Cir., 154 F. 772; Citizens Bldg. of West Palm Beach v. Western Union Tel. Co., 5 Cir., 120 F.2d 982; Cases Collected in Pierce Steel Pipe Corp. v. Flannery, 319 Pa. 332, 179 A. 558, 104 A.L.R. 710. It follows that the attempt of the two members of the arbitration board to rewrite the decision formerly agreed upon and published was without effect.

There remains for consideration that portion of the judgment which directs further arbitration in accordance with the terms of the contract. It is a general rule that in the absence of statute or contract provision, courts ordinarily may not require specific performance of an arbitration clause in a private contract. Restatement, Contracts, Vol. 2, Sec. 500; Willis-

ton on Contracts, Vol. 5, Sec. 1421; Tejas Development Co. v. McGough Bros., 5 Cir., 165 F.2d 276, 279; Utility Workers Union v. Ohio Power Co., Ohio Com.Pl., 77 N.E.2d 629; Sydnor Pump & Well Co. v. County School Board, 182 Va. 156, 28 S.E.2d 33, 39. We find it unnecessary to decide that point now. Here there was no demand in the pleadings for further arbitration. Both parties challenge that provision of the judgment. There is no indication that either party has refused or will refuse in the future to arbitrate under the provisions of the contract which are still effective.

The jurisdiction of the federal court has its source in 29 U.S.C.A. § 185 (a) where it is said, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." This statute is for the purpose only of giving jurisdiction to the federal courts in cases involving labor contracts. It does not give the federal courts any different or additional power than a state court would have if the action had been brought there. Under the Rules of Civil Procedure, federal courts in their discretion may grant relief of a kind not requested in the pleading of either party,[4] but there is nothing in this case to indicate that further arbitration should be forced on the parties against their wishes. They may desire to dispose of the dispute other than by the institution of further arbitration proceedings.

Judgment of the District Court holding the two awards of the arbitrators invalid is affirmed. That portion of the judgment directing additional arbitration is reversed.

---

3. "Q. (By Mr. Shipp) You did, with Mr. Robinson, sign the award of February 26th?—A. Yes, sir.
"Q. Your signature appears on it?—A. Yes, sir, I signed it and sent it to him.
"Q. You understood when you signed it that if another member of the panel signed it, it became a binding award?—A. Yes, I understood that.
"Q. You understood that when you mailed it?—A. Yes."

4. Rule 54(c), Rules of Civil Procedure, 28 U.S.C.A.; Garland v. Garland, 10 Cir., 165 F.2d 131; Truth Seeker Co. v. Durning, 2 Cir., 147 F.2d 54; Ring v. Spina, 2 Cir., 148 F.2d 647, 160 A.L.R. 371.