returning from the field to one's car, hunting camp, motel, etc."

Defendant argues that he was charged with one crime, possessing more than the daily bag limit, but convicted of another crime, killing more than the daily bag limit. The Kansas officials testified that all 23 were killed on the same day. Tr. Vol. II, p. 12, 29–30, Tr. Vol. III, p. 11, and 27–28. The defense called an expert witness, Dr. William G. Eckhardt, a pathologist, who testified, Tr. Vol. III, p. 81:

"Q. Without performing the post mortem tests, can there be any conclusive opinion rendered as to the time these birds were killed, Doctor?

A. Not in my opinion, no."

With reference to the testimony of Dr. Eckhardt, the magistrate said, Tr. Vol. III, p. 125:

"But I simply give more weight to the testimony of the witnesses Sonntag and Branick than I do Dr. Eckhardt. Dr. Eckhardt did not examine these doves or these birds at any time near the time they were taken at all, and he just can't know as much about it, it seems to me, as to this particular case, as these people did in the field.... It's a hypothetical question so far as he was concerned."

The magistrate found that the defendant had killed the doves all on the same day, saying, Tr. Vol. III, p. 138: "I simply find that he actually killed these birds on the same day, that is the 17th day of ... September, 1982." Killing the birds is a necessary antecedent to possession of the birds. If defendant killed the birds on September 17, 1982, he possessed them on the same day. That is what the information charged. We cannot read the charge or the law to permit possession in defendant's car of more than one daily bag limit if defendant killed all of the birds on the same day. The magistrate properly found possession. The evidence is sufficient to sustain the charge of the information.

The argument is that the defendant's consent to the second search was brought to the attention of the trial court but not considered by it. Because the validity of the second search involves a question of fact, the voluntary consent to the second search, the district court, on remand, may wish to remand the case to the magistrate for determination of the facts.

Reversed.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Plaintiff-Appellant, Cross-Appellee,**

v.

**IDEAL CEMENT COMPANY, DIVISION OF IDEAL BASIC INDUSTRIES, INC., Defendant-Appellee, Cross-Appellant.**

**Nos. 84–1906, 84–2001.**

United States Court of Appeals, Tenth Circuit.

May 17, 1985.

Rudolph L. Milasich, Jr., Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa. (Joseph M. Goldhammer of Brauer & Buescher, P.C., Denver, Colo., with him on the brief), for plaintiff-appellant, cross-appellee.

William C. McClearn of Holland & Hart, Denver, Colo. (Gregory A. Eurich, Denver, Colo., on the brief), for defendant-appellee, cross-appellant.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and SEAY, District Judge *.

SEAY, District Judge.

These appeals arise from an action to enforce a labor arbitration award under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185. The circumstances leading to the action are unusual, and merit discussion.

Ideal Cement Company ("Ideal"), acting through its bargaining unit at Ideal's Portland, Colorado cement plant, and the United Steelworkers of America ("USWA"), on behalf of its local 14482, were parties to a three-year collective bargaining agreement ("the Agreement") dated May 1, 1981. The Agreement was typical of most collective bargaining agreements and contained, among other provisions, a dispute resolution article whereby grievances were to be submitted to an arbitrator whose decision on the matter would be final.[1]

---

* Honorable Frank H. Seay, Chief United States District Judge for the Eastern District of Oklahoma, sitting by designation.

1. Article 5, Section 1 of the Agreement provides, in pertinent part:

Should differences arise under this Agreement between the Company and the Union, or

A dispute between the parties arose when Ideal terminated the employment of Jeanne K. Matott on November 17, 1982. The USWA filed a grievance on Ms. Matott's behalf, protesting that the termination was a violation of the 1981 Agreement. All steps of the grievance procedure were exhausted in a timely fashion, and Ms. Matott's grievance was properly submitted to arbitration under the provisions of Article V of the Agreement.

The parties selected Robert W. Smedley as the Arbitrator, and a hearing was held before him on April 14, 1983. Arbitrator Smedley mailed a document captioned "Preliminary Award of Arbitrator" to both parties on July 1, 1983. In that document, Arbitrator Smedley made preliminary findings and suggested a procedure for the submission of additional medical information from each party. Ideal rejected the Arbitrator's suggestion in a letter to Arbitrator Smedley dated July 7, 1983, a copy of which was sent to the USWA. The Arbitrator's suggestion was accepted by the USWA, however, which mailed certain medical information to Arbitrator Smedley on August 1, 1983, providing no copy to Ideal.

On August 8, 1983, Arbitrator Smedley mailed a document (dated August 1, 1983) entitled "Award of Arbitrator" to both parties. The award found in favor of USWA and against Ideal on the issue of wrongful termination of Ms. Matott's employment. Arbitrator Smedley enclosed, with the award, a copy of the medical information he had received from USWA.

In a cover letter accompanying the award and enclosed USWA material, Arbitrator Smedley explained that he had finalized the award on August 1, 1983, but had not immediately mailed it to the parties because of his absence from the office during most the week. Arbitrator Smedley also stated that upon his return to the office on August 6, 1983, he had opened, but not read, the enclosed *ex parte* communication from the USWA. Arbitrator Smedley maintained the *ex parte* communication had not influenced his judgment because: (1) he had already decided and finalized the award before the material arrived at his office, and (2) he had not looked at the material. He stated, however, that he would not tolerate even the appearance of impropriety. He, therefore, offered Ideal the choice of electing to accept the award, or to disqualify the Arbitrator and void the award. At the request of Ideal, and after receiving no response, explanation or denial from the USWA, on September 9, 1983, Arbitrator Smedley set aside his award and disqualified himself from the case.

The USWA filed an action in the United States District Court for the District of Colorado seeking to enforce the August 1, 1983 award. In the alternative, the USWA requested that Ideal be ordered to rearbitrate the dispute. Ideal answered, agreeing to rearbitration, and filed a counterclaim alleging that the USWA's failure to resubmit the grievance to arbitration was a violation of its obligations under the collective bargaining agreement, thereby entitling Ideal to recover attorneys' fees and

its members employed by the Company, ... an earnest effort shall be made to settle such disputes promptly in the following manner:

(a) The grievance shall be taken up ... with the supervisor of the department involved.... If ... no satisfactory settlement is reached, then—

(b) The grievance shall be reduced to writing, and shall be submitted ... to the Plant Manager.... If ... no mutually satisfactory settlement is reached, then—

(c) The grievance shall be referred to the Industrial Relations Department of the Company and the Staff Representative of the Union. If ... no mutually satisfactory settlement is reached, then—

(d) The matter shall be referred to an arbitrator.

. . . . .

The decision of the arbitrator shall be binding and final on both parties.

. . . . .

It is understood, however, that it shall be the function of the arbitrator to make decisions in ... any alleged grievances or violation of the terms of this Agreement, but he shall not have the power to add to or subtract from, or modify any term of the Agreement, or to establish or change any wage rate.

costs expended in its defense of the civil action.

In response to an order of the District Court, the parties filed cross motions for summary judgment; the USWA sought dismissal of Ideal's claim, and enforcement of the August 1, 1983 award, and Ideal sought dismissal of the USWA's claim, and judgment on its counterclaim for attorneys' fees and costs.

The District Court, by order dated June 4, 1984, acknowledged it was without guiding precedent, and found that the arbitration award had been "appropriately voided" in an effort "to protect the integrity of the arbitration process," since the award "could be perceived to have been tainted by an *ex parte* communication." The Court ordered the parties to rearbitrate the grievance before a new arbitrator. Ideal's counterclaim for attorneys' fees and costs was denied.

The USWA filed a timely notice of appeal on June 27, 1984, and an amended notice on July 6, 1984. Ideal filed its notice of cross-appeal on July 6, 1984. Jurisdiction of this Court is claimed under 28 U.S.C. § 1291, as appeals from a final judgment of the District Court.

The USWA argues that the August 1, 1983 award was a final decision on the grievance. As a result, the USWA claims that Arbitrator Smedley lacked authority to vacate the final award, and that he was functus officio in acting to set aside the award. The USWA contends the District Court erred as a matter of law in refusing to enforce the final award, and supports this contention with the observation that the law is well settled that a court may vacate an award only when undue means is proven to have seriously undermined the integrity of the arbitral process.

We begin by noting the parties do not dispute the substantive arbitrability of the grievance. Accordingly, this Court need not concern itself with a separate and inde-pendent determination of that initial question. *See Mobile Oil v. Local 8–766, Oil, Chemical & Atomic Workers International Union,* 600 F.2d 322, 324–25 (1st Cir. 1979).

Turning then to the Arbitrator's method of addressing an unfortunate incident, we are mindful of the federal courts' limited scope of review in passing upon the validity of a labor arbitrator's decision. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). This limited scope of review, as enunciated by the Supreme Court in the *Steelworkers* trilogy, serves well the federal labor law policy of finality in labor disputes, and lends significant support to one of the principal functions of labor arbitration—the settlement of disputes amicably and quickly without extensive judicial intervention.[2] *See Paperhandlers Union No. 1, Int'l Printing Pressmen & Assistants Union, AFL–CIO v. U.S. Trucking Corp.,* 441 F.Supp. 469, 471 (S.D.N.Y.1977) (federal labor law embraces policy of finality in labor disputes), *appeal dismissed for lack of juris.,* 578 F.2d 1369 (2d Cir.1978). *See also Derwin v. General Dynamics Corp.,* 719 F.2d 484, 491 (1st Cir.1983) (established labor policy significantly restricts role of federal courts); *Drywall Tapers and Pointers of Greater N.Y., Local 1974 v. Operative Plasterers' and Cement Masons' Int'l Ass'n,* 601 F.2d 675, 679 (2d Cir.1979) (courts must uphold arbitrator in exercise of broadest jurisdiction), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *Local 453, Int'l Union of Electrical, Radio & Machine Workers, AFL–CIO v. Otis Elevator Co.,* 314 F.2d 25, 28 (2d Cir.) (parties bound

---

**2.** 29 U.S.C. § 173(d) provides in part:
"Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."

by arbitrator's decision even if regarded as unwise or wrong on merits), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963).

The federal courts are to give even greater deference to an arbitrator's decisions on matters of procedure which arise from the dispute and bear on its final disposition. The Supreme Court has stated quite plainly that matters of procedure lie solely within the discretion of the arbitrator. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964).

In this case, Arbitrator Smedley's act of mailing the award together with an offer to void it at Ideal's discretion was a procedural event, and the federal courts are obliged to defer to his decision. Arbitrator Smedley was faced with an unpleasant situation which could have irreparably harmed his integrity as an arbitrator. To avoid the appearance of impropriety he chose to utilize a procedural device not unlike the remittitur/new trial alternative offered to an overly-compensated plaintiff. The decision to offer such an alternative is one of a procedural nature.

That the Arbitrator chose to use such a procedure to protect the integrity of the arbitration process should not be subject to judicial second-guessing. Procedural arbitrability disputes should not be resolved by the courts, since the system's inherent delays and increased costs would significantly frustrate the aims of our national labor policy.

Arbitration has been an effective "substitute for industrial strife," and has been "a major factor in achieving industrial peace." *See United Steelworkers of America,* 363 U.S. at 578, 80 S.Ct. at 1350. Speed and inexpensiveness are essential attributes of the arbitration process. In order to retain these attributes and thereby preserve the effectiveness of the arbitral system, it is incumbent upon the federal courts to recognize that the Arbitrator is in the best position to make decisions relating to and affecting the parties to the arbitration, and to defer to the arbitrator's judgment on such matters.

Arbitrator Smedley's decision being one of a procedural nature, the District Court was correct in deferring to his judgment.

The USWA argues that the award was "final" on August 1, 1983, when it was signed by Arbitrator Smedley, and that he was therefore without authority to render further "procedural" decisions. Applying the same rationale and authorities as used above by this Court in its analysis of the federal courts' role in arbitration matters, the USWA argues that federal labor law policy demanded that neither the Arbitrator nor the District Court interfere with the finality of the award by rendering subsequent decisions voiding the final award and requiring rearbitration.

Even if the doctrine of functus officio were applicable to federal enforcement of arbitration awards pursuant to § 301 of the Labor Management Relations Act[3], the

3. In *Mercury Oil Refining Co. v. Oil Workers International Union, CIO,* 187 F.2d 980, 983 (10th Cir.1951), having found that Oklahoma had no statute providing for proceedings when arbitration is agreed upon, this Court applied the common law doctrine of functus officio to enforce an award made under an arbitration proceeding pursuant to a collective bargaining agreement.

In 1957, however, the United States Supreme Court, in *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972, held that in proceedings under § 301, federal courts were mandated to fashion and apply a substantive body of federal labor law.

In following the lead provided by the above Supreme Court decision, the First Circuit Court

of Appeals, in *Locals 2222, 2320–2327, Int'l Brotherhood of Electrical Workers, AFL–CIO v. New England Telephone and Telegraph Co.,* 628 F.2d 644, 647 (1st Cir.1980), considered the doctrine irrelevant in ordering the resubmission of an existing arbitration award to the original arbitrators for interpretation or amplification.

Many courts have also limited the doctrine's application in order to correct mistakes, complete awards which were not final, and clarify ambiguities. *See, e.g., LaVale Plaza Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 573 (3d Cir.1967); *Hanford Atomic Metal Trades Council v. General Electric Co.,* 353 F.2d 302, 308 (9th Cir.1965).

Nevertheless, substantial authority exists for holding that the doctrine is still effective to bar an arbitrator from acting on an appeal, new

award in this case was not "final" within the meaning of that doctrine.

■ In order for an arbitrator's award to be considered final under the functus officio doctrine, two events must occur. First, the award must be completed, or executed, by the arbitrator. Second, the award must be delivered or declared. In *Mercury Oil Refining Co. v. Oil Workers International Union, CIO*, 187 F.2d 980, 983 (10th Cir.1951), this Court stated "... when arbitrators have *executed* their award and *declared* their decision they are functus officio and have no power or authority to proceed further." Emphasis added. *See also McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir.1982), (citing *LaVale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

■ In the instant case, Arbitrator Smedley no doubt had executed the award on August 1, 1983. While Arbitrator Smedley may have referred to this act as finalization, the law is clear that the mere act of signing an award cannot finalize it. Such a result could lead to illogical, even dangerous, results. An arbitrator who discovers an inadvertent mistake, or who, having been careless in his initial research, discovers a case which significantly alters the situation, would be powerless to correct his signed award—even though no one had seen or been affected by his award.[4] Accordingly, something more than the singular act of affixing one's signature to the

document is required before finality becomes an issue.

■ Although certain exceptions exist, the general rule in our courts of law is that some entry or record of an order is necessary to its completion. *See generally*, 56 Am.Jur.2d, *Motions, Rules and Orders*, § 38 (1971). In arbitration, the law is even more certain on this point. The signed award must be delivered or declared for it to become final. *See Mercury Oil Refining Co.*, 187 F.2d at 983. In the instant case this feat was never accomplished, for when Arbitrator Smedley delivered the award, he included his cover letter outlining his procedural decision. By doing so, he thereby manifested clearly his intent that the award be provisional rather than final. Though he used the word "final" when referring to his award, his actions spoke otherwise. His actions as an arbitrator failed to resolve all the issues fully, since he purposely conditioned the award on a procedural decision yet to be made. Hence, the award in this case was neither final nor complete, and the District Court would have been powerless to enforce the "award." *See Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)*, 500 F.2d 921, 923 (2d Cir.1974). Arbitrator Smedley therefore correctly retained jurisdiction to act on a procedural matter which arose from the dispute and which had a direct bearing on its final determination. The District Court was correct in refusing to interfere with the Arbitrator's procedural decision.

trial, or relitigation of the original issue. *See, e.g., McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *LaVale Plaza, Inc.*, 378 F.2d at 573. Since we decide this case on different grounds, we at this time do not choose to address the issue of whether, or to what extent, the doctrine is a part of the substantive body of federal labor law.

**4.** Even in those jurisdictions where the functus officio doctrine has been limited, it apparently might still be necessary for a court to intervene

and issue an order prior to the arbitrator taking action to correct mistakes in his award.

Accordingly, a court-fashioned rule prohibiting an arbitrator from acting at all once the award was signed would only serve to interfere with the labor law policy of "speedy resolution without judicial interference." Since neither party could possibly suffer detrimental results from an award not yet delivered, it seems to be in the best interest of all that an arbitrator be given some opportunity to review his work (and change it where necessary) prior to its becoming final.

■ Finally, Ideal's argument for attorneys' fees and costs is without merit. In an action to enforce an arbitration award, the allowance of attorneys' fees is discretionary. *Fabricut Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523*, 597 F.2d 227, 230 (10th Cir.1979).

■ In light of our decision in *Mercury Oil Refining Co.*, 187 F.2d 980, it cannot be said that the USWA acted in "bad faith, vexatiously, wantonly, or for oppressive reasons" in seeking enforcement of the August 1, 1983 award rather than agreeing to rearbitration. We agree with the trial court's observation that this was a highly unusual situation with little guiding precedent. The Court's denial of attorneys' fees was not an abuse of discretion.

Affirmed.