### UNITED MINEWORKERS OF AMERICA, Plaintiff,

v.

### SUNNYSIDE COAL COMPANY, Defendant.

Civ. No. 93–C–673 G.

United States District Court, D. Utah, C.D.

Jan. 5, 1994.

Richard Rosenblatt, Boyle Tyburski Toll & Rosenblatt, Englewood, CO, for plaintiff United Mineworkers of America.

Michelle Mitchell and Denise Dragoo, Fabian & Clendinen, Salt Lake City, UT, for defendant Sunnyside Coal Co.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter involves a dispute over the validity and enforceability of a labor arbitration award. On November 19, 1993, the court heard oral argument on cross-motions for summary judgment. Richard Rosenblatt

represented United Mineworkers of America, Plaintiff. Michelle Mitchell and Denise Dragoo represented Sunnyside Coal Company, Defendant.

Having reviewed the file, the motions and the memorandums filed by the parties, the court enters its Memorandum Decision and Order.

## FACTS

Plaintiff, a labor organization, and Defendant, a coal company, are parties to a collective bargaining agreement (the "Agreement"). Under the Agreement, the parties agreed to submit unresolved grievances to final and binding arbitration. On May 8, 1993, a union member, Clyde Wayman, initiated a grievance against Defendant. Because of his seniority, Wayman claimed that he was entitled to a temporary assignment as a front-end loader operator. Defendant had previously selected a less senior employee, Darrell Porter, for the assignment. Both Wayman and Porter were qualified front-end loader operators. On May 26, 1993, unable to resolve the grievance, the parties submitted the following issues to binding arbitration before Arbitrator James A. Evenson (the "Arbitrator"). First, "[d]id Management violate the terms and conditions of the wage agreement by refusing to assign the Grievant, Clyde Wayman, a temporary vacancy as front-end loader operator?" Second, "[i]f so, what is the proper remedy?"

At the arbitration hearing, Plaintiff argued that resolution of the grievance should be controlled by a local agreement, the "Valdez Agreement", entered into in 1987 between Plaintiff and Defendant's predecessor to resolve a prior grievance. Plaintiff maintained that Article XXIII(h) of the Agreement mandated application of the Valdez Agreement.[1] The Valdez Agreement required Defendant to offer temporary assignments to the senior qualified employee. Because both Porter and Wayman were qualified front-end loader operators and Wayman had seniority, Plain-

---

1. Article XXIII(h) provides, in relevant part:
Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement.

tiff argued that Wayman was entitled to the temporary assignment.

Defendant responded that Article XXVI(b) of the Agreement, signed in 1988, superseded and abolished the Valdez Agreement.[2] Defendant further asserted that Article XIX(c) of the Agreement granted the Company discretion in filling temporary assignments and accorded no preference to employees already qualified for temporary assignments.[3] Finally, Defendant contended that the selection of Wayman was not practicable because, unlike the selection of Porter, the selection of Wayman would require reassignment of four to five other employees.

At the close of the arbitration hearing Plaintiff and Defendant requested a quick award from the Arbitrator. Plaintiff explained that a quick decision, if favorable, would enable Wayman to fill the temporary assignment for the maximum period. The Arbitrator responded that he would render a quick statement of decision followed by a written opinion. On May 27, 1993, the Arbitrator issued the following award:

*"Award*

The Grievance is Affirmed."

Following the award was the Arbitrator's signature, the date and this statement: "Written Report will be sent at a later date."

Defendant failed to comply with the Arbitrator's decision. In a June 3, 1993 letter to the Arbitrator, Plaintiff complained that Defendant had refused to comply with the award, and requested the Arbitrator 1) to provide the parties with a complete copy of the decision in the case, 2) to clarify the manner in which the Arbitrator would submit the decision, and 3) to order the Company immediately to comply with the May 27, 1993 Award. In a 15–page written report dated June 26, 1993, the Arbitrator changed his initial award from "affirmed" to "denied." The Arbitrator explained,

Initially, on May 27, 1993, the Arbitrator sent the parties a one page decision stating the grievance is affirmed and that a full written report would be sent at a later date. Initially, this Arbitrator found Article XXIII(h) applied and the Valdez agreement should be enforced. However, after much research and thought, and for the first time in his career of approximately twenty years, the Arbitrator finds he must reverse his initial bench decision and deny the grievance.

The Arbitrator finds the Valdez agreement to be in conflict with [the] full intent and meaning of Section (c) of Article XIX dealing with Temporary Assignments and as a result the Valdez agreement is abolished according to Section (b) of Article XXVI....

... The initial decision by this Arbitrator on May 27, 1993 is reversed and the grievance is denied.

On July 22, 1993, Plaintiff filed a Complaint in this court seeking to enforce the initial award as final, valid and binding, and to vacate the June 26, 1993 written report and award for lack of jurisdiction. On August 18, 1993, Defendant filed an Answer and three Counter-claims, seeking to enforce the June 26, 1993 written report and award as final, valid and binding, and to vacate the initial award as incomplete and in conflict with the Agreement.[4] This matter is now before the court on the parties' cross-motions for summary judgment.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

**2.** Article XXVI(b) provides in relevant part:

This agreement supersedes all existing and previous contracts except as incorporated and carried forward herein by reference, and all local agreements ... heretofore established *in conflict* with this agreement are abolished (emphasis added).

**3.** Article XIX(c) provides in relevant part:

[W]here a Senior Employee has expressed a desire *to improve his ability to perform a job* ..., to the extent practicable, he should be given a preference in filling temporary assignments ... (emphasis added).

**4.** Defendant further seeks an award of costs and attorney fees because of Plaintiff's "unjustified refusal" to accept the written report and last award as final and binding.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party then fails to make a sufficient showing on an essential element of the case to which it bears the burden of proof at trial, the moving party is entitled to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552. In considering summary judgment the court does not weigh the evidence and determine the truth of the matter. Rather, the court determines whether genuine issues of fact exist for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The parties agree that the facts in this case are not in dispute.

## ANALYSIS

I. *A FINAL AWARD IN ARBITRATION WHICH DRAWS ITS ESSENCE FROM THE AGREEMENT IS ENTITLED TO DEFERENCE AND SHOULD BE ENFORCED*

A. *Finality*

Where the parties to a collective bargaining agreement have agreed to resolve their disputes through binding arbitration the actions of the arbitrator should be given great deference. *See United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) ("the function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator"). The objectively determinable intent of the arbitrator governs whether an award is final. *A/S Siljestad v. Hideca Trading, Inc.,* 678 F.2d 391, 392 (2nd Cir. 1982). Absent a clear articulation of intent, courts examine the arbitrator's actions to determine whether an award was final. In this regard, the Tenth Circuit has declared that when an arbitrator executes an arbitration award and delivers that award without

any preconditions, the arbitrator has manifested an intent that the award is final. *United Steelworkers v. Ideal Cement Co.,* 762 F.2d 837, 842 (10th Cir.1985). The Tenth Circuit panel said:

"[i]n order for an arbitrator's award to be final ... two events must occur. First, the award must be completed, or executed, by the arbitrator. Second, the award must be delivered or declared." *Id.*

To permit an arbitrator to change or vary a final award once made would defeat the whole purpose of the arbitration procedure. Accordingly, when an arbitrator issues a final award that "draws its essence" from a collective bargaining agreement, it must be enforced by the court.

B. *Essence from the Agreement*

An arbitration award "is legitimate only so long as it draws its essence from the collective bargaining agreement." *United States Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). In this regard, the Supreme Court has made it clear that "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Id.* In *Paperworkers v. Misco Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987) the Supreme Court went even further stating

as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn [the] decision.

II. *THE INITIAL AWARD IN THIS CASE WAS A FINAL AWARD WHICH DREW ITS ESSENCE FROM THE AGREEMENT*

In the instant case, the Arbitrator signed the initial "Award" and delivered it to the parties. Nevertheless, defendant contends that the Arbitrator did not intend the initial award to be a final and complete determination of the issues submitted for arbitration. Defendant maintains that since the Arbitrator did not discuss remedies and had yet to

supply a written report, the award was only preliminary and not final. Additionally, Defendant asserts that the parties granted the Arbitrator continuing jurisdiction to issue the written report in which he denied the grievance. Each of these arguments will be addressed seriatim.

### A. *Finality*

#### 1. *Failure To Address a Remedy Did Not Render the Initial Award Non Final*

■ Defendant contends that since the parties submitted two issues for arbitration,[5] and the Arbitrator's initial award only addressed the first issue, that award did not constitute a complete determination of the issues submitted for arbitration and could not have been intended as a final award. However, the action of the Arbitrator in affirming the grievance in this case in fact provided the only remedy sought. Since Wayman only sought placement in the temporary assignment, the initial award constituted an answer to both questions. Moreover, the later action of Wayman in filing a second grievance buttresses his claim that the only remedy sought in the grievance at issue was placement in the temporary position.[6] In any event, the court rules that the initial award was not deficient by failing explicitly to address a remedy.

#### 2. *Failure to Issue a Written Report Did Not Preclude Finality of the Initial Award*

■ Defendant next argues that because the initial award omitted a written report, it was not intended to be a final resolution of the matter. In this regard, defendant points to the statement in the initial award, "Written report will be sent at a later date." That statement does not persuade this court that the initial award was provisional or tentative rather than final. The statement referred to by Defendant does not contain any conditions or suggest any contingencies. In *Ideal Cement*, the Tenth Circuit found an award labeled as "final" nonetheless to be provisional because an accompanying cover letter conditioned the award on a decision *yet to be made*. The *Ideal Cement* court said, "[t]hough [the arbitrator] used the word 'final' when referring to his award, his actions spoke otherwise ... since [he] conditioned the award on a procedural decision yet to be made." *Ideal Cement*, 762 F.2d at 842.

Defendant also points to the format of the arbitration reports, submitted as exhibits, to suggest that both parties expected a written report to accompany the final award. Those arbitration reports typically included a full written explanation of the decision followed by an award. In this case, however, the parties requested a "quick" award, in recognition that exigent circumstances—placement in a temporary assignment available for only eight weeks—necessitated an immediate award. In effect the parties requested the Arbitrator to make an award immediately, and not to delay it for want of an explanatory report which could be supplied later.

■ An arbitrator has no obligation to issue a written report explaining the reasons for an award. Moreover, the absence of a written report does not undermine the validity or enforceability of an award. *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361. In *Sullivan, Long & Hagerty, Inc. v. Laborers*, 980 F.2d 1424 (11th Cir.1993), the Eleventh Circuit stated that

> arbitrators are not required to explain an arbitration award and silence cannot be used to infer grounds for vacating the award; to vacate an award, the moving party must refute every reasonable basis upon which the award could have been based.

*Id.* at 1427. This court agrees.

Under the circumstances of this case, it is apparent that the arbitrator expected to is-

---

**5.** *First,* "[d]id Management violate the terms and conditions of the wage agreement by refusing to assign the Grievant, Clyde Wayman, a temporary vacancy as front-end loader operator?" *Second,* "[i]f so, what is the proper remedy?"

**6.** Wayman later filed an additional grievance seeking compensation for the period during which Defendant failed to comply with the Arbi-

trator's initial award. This was done subsequent to the initial "favorable" award, but prior to the final written report reversing that reward. It would be pointless to seek such remedy after a favorable ruling on the first grievance, unless that remedy was not at issue in the initial arbitration grievance.

sue a written report in explanation and confirmation of his "initial bench decision." After issuance of the initial unqualified award, all that remained was the ministerial act of preparing an explanatory report. The award as made was no less final because of the absence of such a report.

### 3. An Arbitrator's Subjective Intent Is Irrelevant

 The Arbitrator set forth in his written report, submitted about one month after the initial award was delivered, a statement that "after much research and thought" his "initial decision" should be reversed.[7] His well-reasoned later report represented a reconsideration of the prior decision. Perhaps all along the Arbitrator subjectively intended to reserve a final decision pending further study. If so, he did nothing to manifest such an intention. Actually, the Arbitrator's statement in the later submitted written report provides evidence of his original actual intention: "[i]nitially, this Arbitrator found Article XXIII(h) applied and [that] the Valdez agreement should be enforced." By his own statement it is manifest that the Arbitrator considered the facts and provisions of the Agreement before he issued the initial award. However, even if an arbitrator were to harbor the subjective intent and reservation that an award rendered absolutely and delivered unqualifiedly was really not final, such subjective reserved intent would be of no legal significance.

The interpretation of the initial award urged by Defendant would render the initial award meaningless. This court finds nothing in the initial award to indicate an intention that it did not constitute an award which was effective immediately. There was nothing in that award to suggest that it was not final and unconditional. It was given in obvious response to the parties' request for a "quick decision." If it was not final when given, it had no meaning at all. Accordingly, the court rules that the objectively determinable

intention of the Arbitrator was that the initial award be final and binding.

### B. Essence drawn from Agreement

 Defendant argues that the first award was invalid because it contradicted provisions of the Agreement. According to Defendant, Article XXVI(b) of the Agreement superseded and abolished the Valdez Agreement. Furthermore, it is argued that the phrase "to the extent practicable" in Article XIX(c) of the Agreement, provides the Company discretion in filling temporary assignments. Finally, Defendant contends that Article XIX(c) of the Agreement accords Wayman no preference because he was already qualified for the temporary assignment and could not have been a person seeking to "improve his ability" as contemplated under the Agreement.

Plaintiff responds that the Arbitrator's initial award, based upon the applicability of the Valdez agreement and Article XXIII(h) of the Agreement, drew its essence from the Agreement. Plaintiff further contends that the Agreement and the Valdez agreement do not necessarily conflict. Plaintiff observes that Article XIX(c) was part of the Agreement when the parties entered into the Valdez agreement.[8]

Article XIX(c) of the Agreement simply states, "where a senior Employee has expressed a desire to improve his ability ... he shall be given a preference." While the section could be interpreted to exclude those employees already qualified for a temporary assignment from the preference, on its face the section appears to apply to all employees, including a senior employee who desires to *improve* his ability. That is certainly one reasonable interpretation.

The Arbitrator's written report indicated that the initial award was based on an interpretation of the Agreement. Simply because the Arbitrator issued what he believed was a

---

7. The Arbitrator stated

[i]nitially, this Arbitrator found Article XXIII(h) applied and the Valdez agreement should be enforced. However, after much research and thought, and for the first time in his career of approximately twenty years, the Arbitrator

finds he must reverse his *initial bench decision* and deny the grievance (emphasis added).

8. Plaintiff also points out that another arbitrator in a different proceeding held there was not an inherent conflict between the Valdez Agreement and Article XIX(c) of the Agreement.

more well-reasoned legal interpretation in his subsequent written report, does not mean that the initial award did not draw its essence from the Agreement. Nothing requires a perfectly reasoned arbitration award. A fair interpretation of the Agreement suffices. In this regard, the Supreme Court has made it clear that courts should not reject or overturn arbitration awards simply because the court might have a different view of the law, even if the court regards the arbitrator's decision as erroneous. *Paperworkers,* 484 U.S. at 38, 108 S.Ct. at 370.

Based upon the foregoing, this court rules that the Arbitrator's initial award was not invalid because of any alleged inconsistency or conflict. Further, it is apparent to the court that the initial award arguably drew its essence from the Agreement.

### III. THE ARBITRATOR'S JURISDICTION WAS NOT EXTENDED BY ACTION OF THE PARTIES

█ Defendant argues in the alternative that Plaintiff acknowledged the Arbitrator's continued jurisdiction to issue a final written report denying the grievance. In this regard, defendant cites *District 50, UMW v. James Julian, Inc.,* 341 F.Supp. 503, 506–07 (M.D.Pa.1972), in which case the court enforced a second award because the employer had impliedly consented to the continued jurisdiction of an arbitrator by not objecting to the arbitrator's assignment at a second arbitration hearing on the same matter. Defendant urges that the June 3, 1993 letter submitted after the initial award in this case presents a similar situation. It is claimed that by reason of that letter, plaintiff conferred or reconferred jurisdiction in the Arbitrator by requesting a complete copy of the decision from the Arbitrator. Relying on authorities that any waiver of the Union's legal rights under the initial award would have to be "clear and unmistakable," plaintiff avers that the letter did not create any new right, waive any pre-existing right, or re-

confer jurisdiction to reopen the initial decision. *See Timken Roller Bearing Co. v. NRLB,* 325 F.2d 746 (6th Cir.1963).

The letter in question simply notified the Arbitrator of claimed noncompliance by the Company and requested procedural clarification of how the award was to have been submitted to the parties. The court finds that the letter did not grant the Arbitrator authority to reverse the initial award.

### IV. AN ARBITRATOR LACKS AUTHORITY TO VARY A FINAL AWARD UNDER THE DOCTRINE OF FUNCTUS OFFICIO

█ Generally an arbitrator's power is exhausted once he issues his final award. In this regard, the Third Circuit in *Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d 327 (3rd Cir.1991), asserted, "[a]s a general rule, once an arbitration panel renders a decision regarding the issues submitted, it becomes *functus officio* and lacks any power to reexamine that decision." *Id.* at 331. *Accord, United Mineworkers, District 28 and Local Union 1568 v. Island Creek Coal Company,* 630 F.Supp. 1278, 1279 (W.D.Va.1986) ("[t]he power of the arbitrator ends with the making of the award").

In *Pressman Local 28 v. Newspaper Agency Corp.,* 485 F.Supp. 511 (D.Utah 1980), Judge Winder of this court stated that "when the arbitrator renders his final award, his power under the agreement is exhausted, and, unless his subsequent attempts to act under the agreement fall within a few very narrow categories ... they are null and void." *Id.* at 515. The parties have not raised and the court does not find anything in the record to support application of any of the exceptions to the general rule noted by Judge Winder in *Pressman,* i.e., fraud, misconduct by the arbitrator or parties, violation of public policy, or an arbitrator exceeding his grant of authority. Cases cited by the defendant do not involve the exceptions.[9] It would require application of one of these

---

9. The cases cited by defendant are inapposite here. In *Red Star Express Lines v. Local 170,* 809 F.2d 103 (1st Cir.1987) the First Circuit allowed an arbitrator to reopen a case and reconsider a portion of his award; the court expressly found that portion of the award not to be final. *Id.* at

106. In *Courier–Citizen,* 702 F.2d 273 (1st Cir. 1985), the court rejected a *functus officio* argument that an arbitrator had lost jurisdiction to issue a final award because the initial award was incomplete. *Id.* at 278–79.

exceptions to justify reopening an award. *See Red Star,* 809 F.2d at 106; *Colonial Penn,* 943 F.2d at 332.

In the case at bar none of the exceptions which would justify reopening an otherwise final award apply. A final award must be honored and not varied or reopened in the absence of such an exception. Otherwise, parties would not submit to binding arbitration. If the Arbitrator had denied the grievance at the outset under the same circumstances and in the same manner as he initially granted the grievance, and later issued a written report reversing the first decision, it is without doubt that this court would have enforced the initial award. This would be so even though the court may have preferred to enforce a more well-reasoned and thoroughly researched decision later issued by the Arbitrator in a written report. That a subsequent decision rendered after submission of a final award may have been the better reasoned and more persuasive decision does not negate the finality and enforceability of the initial award.

Based upon the foregoing, this court concludes from all objective indicators that the Arbitrator intended the initial award to be final and that the initial award arguably drew its essence from the Agreement. The initial award resolved the essential issues presented for arbitration. Thereafter, the Arbitrator lacked authority to change or reverse the award. Accordingly, it is hereby

ORDERED, that Plaintiff's motion for summary judgment is granted; it is

FURTHER ORDERED, that Defendant's motion for summary judgment is denied.