**TEAMSTERS LOCAL 312**

v.

**MATLACK, INC.**

**Civil Action No. 95–5661.**

United States District Court, E.D. Pennsylvania.

March 4, 1996.

---

Mark P. Muller, Chester, PA, for Plaintiff.

J. Carlisle Peet, III, Matlack, Inc., Wilmington, DE, Charles E. Sykes, Bruckner and Sykes, Houston, TX, for Defendant.

## MEMORANDUM

BARTLE, District Judge.

This is an action by Teamsters Local 312 ("Union"), pursuant to § 301(c) of the Labor Management Relations Act, 29 U.S.C. § 185(c), to enforce an arbitration award made under a collective bargaining agreement. The parties have filed cross-motions for summary judgment.

The grievance in issue, filed by the Union, alleged that defendant Matlack, Inc. ("Matlack") had improperly transferred "waste water shipments" to its non-union Elkton, Maryland terminal for handling. These waste water loads were described as originating "in Muscatine, Iowa or other parts of the Northern Region" and previously handled at Matlack's Bensalem, Pennsylvania terminal. During the grievance process, the Union, by means of a handwritten amendment, sought to expand the original grievance to include not just the waste water from Muscatine, Iowa and the Northern Region but also ". . . any waste water that came into and out of this [Bensalem] terminal!"

Since the grievance was not resolved at Steps One and Two of the grievance process, it was submitted to arbitration in accordance with the collective bargaining agreement. The arbitration hearing was held on April 27, 1995, before Charles D. Long, Jr., an experienced arbitrator. At the commencement of the hearing, Matlack contested the timeliness of the original grievance. Matlack also challenged the scope of the hearing, claiming that the written amendment to the original grievance made by the Union representative was improper. Not surprisingly, the Union disagreed. The arbitrator proceeded to take testimony and received documentary evidence.

On June 13, 1995, the arbitrator handed down his decision. He ruled that the original

grievance was timely and that the amended grievance in its entirety was at issue. He found that Matlack had violated the collective bargaining agreement by transferring shipments originating in Muscatine, Iowa to Maryland and ordered that Matlack immediately return the disputed Muscatine shipments to the Bensalem terminal. His decision required Matlack to make the employees at Bensalem whole for any lost wages stemming from the company's improper action. With respect to the shipments from places other than the Muscatine area, the arbitrator remanded the issue to Step Two of the grievance procedure for consideration and disposition. He retained jurisdiction for 60 days in the event the matter was returned to him.

The day following his receipt of the arbitrator's June 13, 1995 award, Matlack's counsel wrote a letter to the arbitrator objecting to the scope of his decision. Matlack contended that the arbitrator had advised the parties at the April 27, 1995 hearing that he would only address the procedural issues and would delay any decision on the substantive matters until Matlack had had an opportunity to present further evidence on the non-Muscatine shipments and then to file a brief. For this reason, Matlack had not submitted to the arbitrator a brief on the merits.

A flurry of letters and phone conversations among the arbitrator and both counsel followed. Finally, on July 17, 1995, the arbitrator withdrew from the case and returned to Matlack the $875 which it had paid him as its share of the arbitration fee.[1] After receiving queries from both sides about the impact his withdrawal would have on his June 13, 1995 decision, Mr. Long sent counsel a letter dated July 31, 1995. In this communication, Mr. Long explained:

> My decision to withdraw from this matter concerned a misunderstanding concerning the procedure to be followed prior to a decision resolving the substantive portion of the issue which is separate and unrelated to that portion of the issue concerning the scope of the grievance. Consistent with the record at the close of the hearing

on April 27, 1995, it was my intent was [sic] to leave the matter in the following posture:

> 1. a binding decision dated June 13, 1995, extending the scope of the underlying substantive issue to include the grievance of June 1, 199[4], as amended during the step 2 grievance meeting on August 9, 199[4].

> 2. no decision concerning the underlying substantive issue of whether the Employer's conduct violated Article 50, *Subcontracting,* of the collective bargaining agreement, as alleged.

From this letter, it appears the arbitrator agreed with Matlack's understanding of what had happened at the arbitration hearing. In any event, Matlack refused to comply with the June 13, 1995 decision of the arbitrator and sought the Union's agreement to arbitrate the matter anew with a different arbitrator. The Union refused. It has brought this action to enforce the terms of the original arbitration ruling.

Complicating matters further, the following exchange occurred during Mr. Long's deposition in this case:

> BY MR. MULLER [counsel for the Union]:

> Q. Mr. Long, at any time, did you communicate to either Mr. Peet [counsel for Matlack] or myself, either verbally or in writing, that your opinion issued on June 13, 1995, was vacated?

> A. No, sir.

Mr. Long's answer at his deposition raised questions in the court's mind about his letter of July 31. Under Rule 56 of the Federal Rules of Civil Procedure, the court may grant summary judgment only if "there is no genuine issue as to any material fact." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Faced with some uncertainty as to what Arbitrator Long intended after issuing his June 13, 1995 award, and in the interest of expediting a final decision in this action, we sought to have the matter clarified.[2] Consequently, we held a hearing at which Mr. Long appeared.

---

1. The Union had not yet paid its share of the fee, and no request for payment has been made.

2. There was no official verbatim transcription of the April 27, 1995 arbitration hearing. While Mr. Long did tape-record the proceeding, the

The Union has contested the court's decision to call Mr. Long as a witness. The court is well aware of the numerous precedents cautioning against taking testimony from an arbitrator about his mental processes in reaching a decision. *See, e.g., Sperry Int'l Trade, Inc. v. Government of Israel,* 602 F.Supp. 1440 (S.D.N.Y.1985). The court's purpose here was different and quite limited. We simply sought to find out what the arbitrator *said* at the April 27 arbitration hearing concerning the procedure he intended to follow. The court wanted to know whether the arbitrator told the parties he would only decide the timeliness and scope of the grievance and thus whether Matlack was justified in not briefing the substantive issues. This inquiry is proper. *Local P–9, United Food and Commercial Workers Int'l v. George A. Hormel & Co.,* 776 F.2d 1393, 1395–96 (8th Cir.1985). The Union's position opposing the testimony of the arbitrator even for this narrow purpose was without merit.

Mr. Long testified without contradiction that he had told the parties at the April 27, 1995 arbitration hearing that he would only decide the timeliness and scope of the grievance and would defer any ruling on the substance until a future time. He was also aware that in light of his decision Matlack would only brief the procedural issues.

According to Mr. Long, he usually takes almost verbatim notes at any hearing. However, in this case he stopped doing so when he became immersed in a discussion with counsel about the scope of what he would decide and the nature of the briefs to be filed. Sometime later as he reviewed his notes in preparation of the award, he found nothing that reflected his conversation with counsel concerning the limited issues to be determined. He conceded that without any written reminder to himself he had forgotten about what he had said at the April 27 hearing. After his April 27 statement was called to his attention and he was reminded that Matlack had not briefed the substantive issues in reliance on his statement, the arbitrator's recollection was refreshed that Matlack

was correct. He therefore wrote his letter of July 31.

In disputes involving an arbitrator's award under a collective bargaining agreement, the role of the court is "very limited." As the Supreme Court has observed, "the courts ... have no business weighing the merits of the grievance." *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Here, the Union argues that the arbitrator made and delivered a final award on June 13, 1995, and the court should enforce it. In contrast, Matlack takes the position that the arbitrator, as he himself has acknowledged, made a fundamental error in deciding the merits after advising Matlack that he was only going to rule on the procedural issues.

To support its position, the Union invokes the doctrine of functus officio. That doctrine holds that once an arbitrator has executed and delivered his award, his power to act is exhausted, and he cannot reexamine his decision. *Colonial Penn Ins. Co. v. The Omaha Indem. Co.,* 943 F.2d 327, 331 (3d Cir.1991). Even if an arbitrator makes a mistake of law or fact, the award may not be altered. *See La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572 (3d Cir. 1967). This principle of functus officio is predicated on the need for finality. It is also designed to prevent improper influences on an arbitrator to change his or her mind once a final decision is rendered. *See id.* It is undisputed that the arbitrator here issued a final award on June 13, 1995.

The Court of Appeals of this circuit has never held that the doctrine of functus officio applies to arbitration awards under collective bargaining agreements as opposed to other types of arbitration. In any event, even if applicable, this somewhat harsh doctrine has a number of recognized exceptions. An arbitrator (1) can correct a mistake apparent on the face of his award, including clerical mistakes and obvious mathematical calculations; (2) can adjudicate any issue submitted but not adjudicated in the award;

recording is not audible in parts, and the arbitrator has some questions as to the accuracy of the

incomplete transcription made from the tape by one of the parties.

and (3) may clarify any ambiguity "where the award, although seemingly complete, leaves doubt whether the submission has been fully executed." *Colonial Penn Ins. Co.*, 943 F.2d at 332.

■ There are also other situations where functus officio or the doctrine of finality cannot be invoked to enforce an arbitration award. For example, no court would uphold an award if fraud, bias, or other misconduct existed on the part of the arbitrator or if fraud or misconduct on the part of one of the parties affected the result. Moreover, if the award violated public policy, it could be successfully attacked. *See Washington–Baltimore Newspaper Guild v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C.Cir.1971); *Salt Lake Pressmen and Platemakers v. Newspaper Agency Corp.*, 485 F.Supp. 511, 515 (D.Utah 1980).

It has also been held that procedural decisions by arbitrators are solely within their discretion and not subject to second guessing by the courts. In *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837 (10th Cir.1985), an arbitrator had mailed a "Preliminary Award" to the parties, with the suggestion for a procedure for submission of additional evidence. The company rejected the suggestion, while the Union transmitted additional evidence. A few days later, the arbitrator, explaining that he had not looked at the Union's additional submission, mailed his final "Award of Arbitrator" in favor of the Union. Nonetheless, he stated he would not "tolerate even the appearance of impropriety" and offered the company the option of accepting the award or voiding it and rearbitrating the grievance. The company chose to rearbitrate, and the arbitrator voided his award. The Union sought enforcement of the award in the District Court. Without deciding whether functus officio was applicable, the court referred to the Supreme Court's decision in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557–58, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). There the Supreme Court held that matters of procedure are solely within the discretion of the arbitrator. The Court of Appeals stated in *Ideal Cement:*

... Arbitrator Smedley was faced with an unpleasant situation which could have irreparably harmed his integrity as an arbitrator. To avoid the appearance of impropriety he chose to utilize a procedural device not unlike the remittitur/new trial alternative offered to an overly-compensated plaintiff. The decision to offer such an alternative is one of a procedural nature.

That the Arbitrator chose to use such a procedure to protect the integrity of the arbitration process should not be subject to judicial second-guessing. Procedural arbitrability disputes should not be resolved by the courts, since the system's inherent delays and increased costs would significantly frustrate the aims of our national labor policy.

762 F.2d at 841.

■ The thrust of the cases seems to be as follows. Courts have a limited role in reviewing a non-ambiguous final labor arbitration award and clearly may not invalidate an award where the arbitrator has jurisdiction but makes a mistake of law or fact other than a clerical or obvious mathematical mistake. However, if the arbitration process lacks integrity or fundamental fairness, a court cannot and should not sustain the award. Here, the arbitrator told the parties one thing and, albeit mistakenly, did another. In reliance on what the arbitrator said at the April 27 hearing, Matlack did not brief the grievance on the merits. The arbitrator heard from only one party on the merits and decided in favor of that party. Neither functus officio nor any doctrine of finality can be invoked to enforce the award under these circumstances. To do so would undermine the integrity of the arbitration process, much like the enforcement of any award where bias or misconduct on the part of the arbitrator occurred. While the arbitrator's error was not intentional, his error nonetheless resulted in fundamental unfairness.

As noted above, we have before us cross-motions for summary judgment. At this court's hearing the parties declined an opportunity to present additional evidence and agreed to have the court decide the matter on the merits. We find the testimony of the

arbitrator to be credible. To the extent that the arbitrator ruled on substantive issues, the arbitration award of June 13, 1995 will not be enforced.

### ORDER

AND NOW, this 4th day of March, 1996, based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED that Judgment is entered against defendant Matlack, Inc. and in favor of the plaintiff Teamsters Local 312, to the extent of enforcing the arbitration award of June 13, 1995 as to the timeliness and scope of the grievance only.